Ricky ALLEN, Appellant

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2011–SC–000009–MR.

Supreme Court of Kentucky.

Sept. 26, 2013.

Katie L. Benward, Assistant Public Advocate, Department of Public Advocacy, for appellant.

Jack Conway, Attorney General of Kentucky, James Daryl Havey, Assistant Attorney General, for appellee.

Opinion of the Court by Chief Justice MINTON.

After approving Ricky Allen's request to represent himself in a jury trial of an indictment charging four felonies and a second-degree persistent felony offense (PFO 2), the trial court appointed standby counsel for Allen despite his objection. At trial, the court curtailed the range of Allen's self-representation by barring him from all bench conferences, allowing only standby counsel to participate because the court determined Allen was a threat both to disrupt the trial and to flee. The trial resulted in a judgment of conviction and twenty-year sentence of confinement as a second-degree persistent felon, from which Allen now appeals as a matter of right.[1]

We reject Allen's argument that the trial court erred by failing to grant a directed verdict on three charges, but we reverse the judgment because we hold that the trial court's restriction of standby counsel at bench conferences in lieu of Allen himself or hybrid counsel left Allen unrepresented at these critical stages of the trial proceeding in violation of his Sixth Amendment rights.

In light of our reversal, we confine our discussion of the other issues Allen raises to those likely to recur in the event of a retrial.

## I. FACTUAL BACKGROUND.

Grace Fellowship Church was burglarized. The church reported that several items were missing, including a Compaq laptop computer, digital camera, bass guitar, and $340 in cash. In the course of the burglary, a number of door locks, cabinet locks, and a desk lock were damaged. The repair and replacement necessitated by the damage cost the church over $5,000.

A few months later, police received a call from Cecil Hall reporting a domestic dispute between Ricky Allen and Cecil's mother, Verda Hall. Cecil met the police at his mother's residence where he turned over to the authorities a USB drive containing files belonging to Grace Fellowship Church and its pastor. Cecil told authorities that he downloaded the files from a computer that Allen asked him to evaluate. Cecil claimed that Allen bragged about breaking into a place in Carnaby Square—the shopping center where the church was located—and that Allen threatened him when Cecil figured out the laptop was stolen from the church. In the course of the investigation, Verda told police that on the night of the burglary, she dropped Allen off at Carnaby Square, which was about a half mile from her home. When she dropped Allen off, he was carrying a black bag. She also claimed that sometime later she saw a guitar in the back of Allen's truck.

A grand jury indicted Allen, charging him with third-degree burglary, first-degree criminal mischief, theft by unlawful taking over $300, receiving stolen property worth $300 or more, and being a PFO 2. Allen represented himself at trial with assistance from standby counsel.

At trial, Cecil testified that Allen presented him with a laptop that appeared to belong to the church based on the downloaded documents. He also claimed that Allen had told him in the past how he would go about breaking into a place. But Cecil denied his prior statements to the police that Allen admitted to burglarizing the church and that Allen threatened to harm him if he reported the crime. Cecil

---

1. Ky. Const. § 110(2)(b).

admitted that he did not like Allen, and this caused him to exaggerate his statements to the police.

Verda testified that she did not remember telling police that she dropped Allen off in the church's vicinity or that she saw a guitar in Allen's truck. She claimed that she was taking high doses of prescription drugs when she gave her statement to the police. Verda also testified that the only guitar she ever saw was one located in a building on property she owned with her husband (not Allen).

A detective testified to Cecil's and Verda's prior inconsistent statements. The detective had viewed the files on the USB drive and confirmed that they belonged to the church. Neither the files nor the thumb drive itself were introduced into evidence. There was no surveillance footage identifying Allen, and no usable fingerprints were found at the scene. And none of the stolen property was ever recovered.

At the close of the Commonwealth's case, the trial court granted a directed verdict for lack of sufficient evidence of the crime of receiving stolen property worth $300 or more and instructed the jury on receipt of stolen property worth less than $300. The jury convicted Allen of all counts submitted to it and determined Al-

len to be a PFO 2. The trial court sentenced him to twenty years' imprisonment.

## II. ANALYSIS.

### A. Allen was not Entitled to a Directed Verdict.

Allen claims the trial court erroneously denied his motion for a directed verdict on the charges of burglary, criminal mischief, and theft.[2] This issue is properly preserved for appeal.[3] We find that sufficient evidence supported Allen's convictions.

A trial court ruling on a directed verdict motion must draw all fair and reasonable inferences in the Commonwealth's favor.[4] "[T]he trial court must assume that the evidence for the Commonwealth is true, but [reserve] to the jury questions as to the credibility and weight to be given to such testimony."[5] On appeal, we will reverse a trial court's denial of a directed verdict only if, under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt.[6] There must be evidence of substance, and the Commonwealth must present more than a mere scintilla of evidence.[7]

Allen protests that he is entitled to a directed verdict on the charges of third-degree burglary,[8] first-degree criminal

---

2. Allen does not challenge the sufficiency of the evidence supporting his conviction for receiving stolen property.

3. At the close of the Commonwealth's case, Allen's standby counsel moved for a directed verdict on counts 1, 2, and 3. The trial court pointed out that only Allen could move for a directed verdict. At which point, Allen adopted counsel's motions as his own. Because his motion was not followed by more evidence, Allen was not required to renew his motion in order to preserve the issue for appeal. *Hampton v. Commonwealth,* 231 S.W.3d 740, 750 (Ky.2007).

4. *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky.1991).

5. *Id.*

6. *Id.*

7. *Id.* at 187–88.

8. A person is guilty of third-degree burglary "when, with the intent to commit a crime, he knowingly enters or remains unlawfully in a building." Kentucky Revised Statutes (KRS) 511.040(1).

mischief,[9] and theft by unlawful taking over $300 [10] because no evidence existed to show that he entered or remained unlawfully in the church, stole the items, or caused damage to church property. He claims that the evidence presented at trial necessarily left a doubt concerning Allen's guilt. But we cannot say that it was clearly unreasonable for a jury to find Allen guilty of the charged crimes.

 It is true that no physical evidence existed to link Allen directly to the scene of the burglary. But this fact alone does not warrant a directed verdict. A "[c]onviction can be premised on circumstantial evidence of such nature that, based on the whole case, it would not be clearly unreasonable for a jury to find guilt beyond a reasonable doubt."[11] "In cases . . . where there is a lack of physical evidence or eyewitnesses, the case should nonetheless be submitted to the jury where when the various items of evidence are added together, a mosaic appears upon which a reasonable jury could look and conclude that appellant was guilty."[12]

Here, the jury found Allen guilty of possessing the stolen laptop.[13] From this, they could believe that he stole the laptop from the church and committed burglary. Years ago, our predecessor court held that

> where there is substantial evidence showing a breaking and entering of a dwelling and a taking of property therefrom, which is supported by proof that the stolen property was found in the possession of the defendant, or in the possession of a third person who testifies that said property was obtained by him from the said defendant, that such showing is sufficient to make out a prima facie case of house breaking[.][14]

It was reasonable for the jury to find also that Allen burglarized the church, thereby causing damage to church property and taking the other missing items. Cecil told police that when he figured out the laptop was stolen, Allen threatened to harm him if he told the police. Cecil also claimed that Allen admitted to breaking into a place in Carnaby Square. Verda told police that on the night of the crime, she dropped Allen off in the shopping center where the church was located. Allen was carrying a black bag with him. Verda also said that she saw a guitar in Allen's truck, and the detective understood this to be a few days after the crime.

Cecil and Verda recanted many of their statements at trial. But it was for the jury to determine whether it believed their testimony or out of court statements to the police. The Commonwealth established that Verda was still in contact with Allen, and the two corresponded while he was in jail. And, in closing, the Commonwealth argued that Cecil changed his testimony after having lunch with his mother on the

9. "A person is guilty of criminal mischief in the first degree when, having no right to do so or any reasonable ground to believe that he has such right, he intentionally or wantonly defaces, destroys or damages any property causing pecuniary loss of $1,000 or more." KRS 512.020(1).

10. "[A] person is guilty of theft by unlawful taking or disposition when he unlawfully: (a) Takes or exercises control over movable property of another with intent to deprive him thereof[.]" KRS 514.030(1)(a).

11. *Graves v. Commonwealth*, 17 S.W.3d 858, 862 (Ky.2000).

12. *Davenport v. Commonwealth*, 177 S.W.3d 763, 774 (Ky.2005) (citation and internal quotation omitted).

13. Again, Allen does not challenge his conviction for receipt of stolen property under $300.

14. *Conover v. Commonwealth*, 473 S.W.2d 825, 827 (Ky.1971) (citing *Rains v. Commonwealth*, 293 Ky. 429, 169 S.W.2d 41 (1943)).

day of trial. "[E]ven when the evidence is contradictory, the credibility of witnesses and the weight to be given to sworn testimony are for the jury to decide."[15] So the trial court did not err by denying Allen's motion for a directed verdict.

## B. The Trial Court Violated Allen's Sixth Amendment Rights by Excluding Him from Bench Conferences.

Allen was represented in several cases in the trial court by Cotha Hudson, a court-appointed attorney. Before trial in another case, Allen moved, pro se, for a change of counsel, which the trial court denied. During the hearing on Allen's motion, the trial court had to ask Allen not to interrupt other people when they were talking. Following that trial, Allen filed a motion under Kentucky Rules of Criminal Procedure (RCr) 11.42 challenging his conviction because of Hudson's ineffectiveness as trial counsel.

Hudson informed the trial court that Allen's allegations in his RCr 11.42 motion prevented her from further representing him in his other ongoing cases, including the present one. Allen requested to represent himself at the trial of the present case. At the hearing on Allen's request, he interrupted the trial court as it was stating its inclination to hold the RCr 11.42 motion in abeyance. The trial court informed Allen that he was not to interrupt while the judge was speaking.

Despite the trial court's decision to abate Allen's self-representation motion, Hudson was concerned that she should be removed from the case, nevertheless, because Allen would not cooperate with her. A discussion to determine the best way to handle the situation took place among the trial court, Hudson, other Department of

Public Advocacy (DPA) attorneys, and the Commonwealth's Attorney. Allen sought to interject and asked if he could speak, interrupting one of the attorneys who was talking. The trial court told Allen no, but he continued to speak. Allen said that he did not want representation by DPA and would represent himself. The trial court had Allen temporarily removed from the courtroom for failing to remain quiet.

The trial court brought Allen back into the courtroom, conducted a *Faretta* hearing, and took the issue under consideration. The trial court ultimately issued an order granting Allen's motion for self-representation with restrictions. The trial court ruled that Allen knowingly and voluntarily waived his right to representation and appointed Hudson as standby counsel.

Although mindful of Allen's right to represent himself, the trial court could not "ignore Allen's past dealings with th[e] [c]ourt." The trial court noted that Allen was "prone to frequent and uninvited interruptions in the [courtroom]" and was a flight risk. The trial court's determination that Allen was a flight risk was based on the fact that while on trial for a different charge, Allen left the courthouse and was not apprehended for six days.

The trial court believed that Allen would abuse his Sixth Amendment right of self-representation "by using it as another attempt to flee or abuse the judicial process by unnecessary disruption during his trial." So the trial court ordered the following:

1. If Allen engages in disruptive behavior, and after warning continues to do so, Allen will lose his right to represent himself. *Illinois v. Allen*, 397 U.S. 337, 343 [90 S.Ct. 1057, 25 L.Ed.2d 353] (1970).

15. *Roark v. Commonwealth*, 90 S.W.3d 24, 38 (Ky.2002) (citation omitted).

2. If Allen exercises a disregard of the elementary standards of courtroom behavior—to remedy such behavior—the Court will either: a) bind and gag Allen, b) hold Allen in contempt or c) remove Allen from the courtroom. *Id.* at 343–44 [95 S.Ct. 2525].

3. Because of the possibility that Allen may forfeit his right to represent himself if he chooses to engage in disorderly conduct, the Court assigns Allen's current counsel, Cotha Hudson, as standby counsel for Allen. *McKaskle v. Wiggins,* 465 U.S. 168 [104 S.Ct. 944, 79 L.Ed.2d 122] (1984).

4. Ms. Hudson should be fully prepared and ready to proceed with Allen's trial, even in his absence. Ms. Hudson will also be available to Allen for assistance before and during the trial, but shall not interfere with Allen's *Faretta* rights in order that Allen may present his case in his own way.

5. Because Allen is a flight risk he will be confined to his counsel table and will not be allowed to leave. He will address his questions to the witnesses from his table and will remain seated unless otherwise directed by the Court. Finally, Ms. Hudson, not Allen, will handle exhibits, approach for bench conferences, and move about as may be required.

On the morning of trial, Allen informed the trial court he was not ready to proceed because he had not received the order granting his motion for self-representation and his discovery materials were lost. The trial court denied Allen's motion for a continuance, and Allen proceeded to represent himself at trial.

Allen conducted voir dire, made objections, cross-examined witnesses, attempted to call witnesses in his own defense,[16] and delivered an opening statement and closing argument. But he was not allowed to participate in bench conferences. Hudson approached the bench for conferences; as discussed below, Hudson at times spoke on behalf of Allen, at other times remained silent and merely played the role of messenger, and at least twice expressed views contrary to Allen's interests. Allen argues that his exclusion from bench conferences improperly infringed on his Sixth Amendment rights. We agree.

■ The Sixth Amendment of the United States Constitution and Section 11 of the Kentucky Constitution afford a criminal defendant the right to counsel, as well as the right of self-representation.[17] Unlike its federal counterpart, Section 11 of the Kentucky Constitution also guarantees the right to hybrid representation.[18] A defendant's request to represent himself or for hybrid representation must be voluntary, knowing, and intelligent.[19]

---

16. The witnesses that Allen attempted to call were either not present or not allowed for various reasons.

17. "[T]he right of counsel guaranteed by Section 11 of the Kentucky Constitution is no greater than the right of counsel guaranteed by the Sixth Amendment of the United States Constitution...." *Cain v. Abramson,* 220 S.W.3d 276, 280–81 (Ky.2007) (citing *Cane v. Commonwealth,* 556 S.W.2d 902, 906 (Ky. App.1977)).

18. *Deno v. Commonwealth,* 177 S.W.3d 753, 757 (Ky.2005) (citation omitted).

19. To ensure these requirements are satisfied, the trial court must hold what has become known as a *Faretta* hearing in which the defendant "testifies on the question of whether the waiver is voluntary, knowing, and intelligent"; "during the hearing, the trial court must warn the defendant of the hazards arising from and the benefits relinquished by waiving counsel"; and "the trial court must make a finding on the record that the waiver

Even when a defendant makes a knowing, intelligent, and voluntary request to proceed pro se or with hybrid representation, the right of self-representation is not absolute.[20] "The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law."[21] Accordingly, trial courts may place certain restrictions on a defendant's right to self-representation.[22]

"[A] trial court may appoint standby counsel for a defendant even if the defendant objects to such an appointment."[23] We have also recognized the ability of trial courts to impose hybrid counsel in certain situations. For instance, a trial court can appoint hybrid counsel over the objection of a defendant who is borderline competent.[24] And a trial court may require hybrid counsel to cross-examine victim-witnesses over a defendant's objections.[25] A defendant can also forfeit his right to represent himself.[26] "A request for self-representation may be denied upon a determination that the defendant is unable or unwilling to abide by courtroom protocol as he conducts his defense, or if it is made purely as a tactic to disrupt or delay proceedings."[27] These restrictions reflect the fact that "the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer."[28]

The trial court's appointment of Hudson as standby counsel over Allen's objection did not per se violate Allen's *Faretta* rights. But when a trial court appoints standby counsel over a defen-

is knowing, intelligent and voluntary." *Id.* at 758 (quoting *Hill v. Commonwealth*, 125 S.W.3d 221, 226 (Ky.2004), overruled on other grounds by *Grady v. Commonwealth*, 325 S.W.3d 333 (Ky.2010)). Allen does not contend that his waiver of counsel at the *Faretta* hearing was deficient in any way.

20. *Major v. Commonwealth*, 275 S.W.3d 706, 720 (Ky.2009) (citation omitted).

21. *Faretta v. California*, 422 U.S. 806, 834 n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (citation omitted).

22. We also note that "[a] defendant can waive his *Faretta* rights. Participation by counsel with a *pro se* defendant's express approval is, of course, constitutionally unobjectionable.... [A] *pro se* defendant's solicitation of or acquiescence in certain types of participation by counsel substantially undermines later protestations that counsel interfered unacceptably." *McKaskle*, 465 U.S. 168, 182, 104 S.Ct. 944 (1984). Here, the Commonwealth does not contend that Allen waived his objection to standby counsel's presence at bench conferences to Allen's exclusion. And we are disinclined to address the issue, which has not been briefed or argued, especially when courts have varying views of what constitutes a waiver. Moreover, as discussed below, even if Allen acquiesced to Hudson's participation in bench conferences, at times Hudson herself appeared unaware of any obligation to represent Allen at the conferences.

23. *Chapman v. Commonwealth*, 265 S.W.3d 156, 166–67 (Ky.2007) (citations omitted).

24. *Major*, 275 S.W.3d at 722 ("[B]ecause of his borderline competency, the trial court had the right to deny the Appellant the right to proceed *pro se* and to structure the role and scope of hybrid counsel employed in this instance.").

25. *Partin v. Commonwealth*, 168 S.W.3d 23, 29 (Ky.2005).

26. *Faretta*, 422 U.S. at 834 n. 46, 95 S.Ct. 2525 (citation omitted) ("[T]he trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct.").

27. *Hummel v. Commonwealth*, 306 S.W.3d 48, 53 (Ky.2010).

28. *Martinez v. Court of Appeal of California, Fourth Appellate Dist.*, 528 U.S. 152, 162, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000).

dant's objections, the defendant typically may define standby counsel's participation in the trial.[29] "[T]he objectives underlying the right to proceed *pro se* may be undermined by unsolicited and excessively intrusive participation by standby counsel.... Accordingly, the *Faretta* right must impose some limits on the extent of standby counsel's unsolicited participation."[30] In *McKaskle*, the United States Supreme Court imposed two restrictions on the unsolicited participation of standby counsel.

First, the *pro se* defendant is entitled to preserve actual control over the case he chooses to present to the jury. This is the core of the *Faretta* right. If standby counsel's participation over the defendant's objection effectively allows counsel to make or substantially interfere with any significant tactical decisions, or to control the questioning of witnesses, or to speak *instead* of the defendant on any matter of importance, the *Faretta* right is eroded.

Second, participation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself. The defendant's appearance in the status of one conducting his own defense is important in a criminal trial, since the right to appear *pro se*

exists to affirm the accused's individual dignity and autonomy.[31]

■ We agree with those jurisdictions finding that participation of standby counsel in bench conferences over a defendant's objection typically offends the two limitations outlined in *McKaskle*.[32] Bench conferences often involve vital legal arguments, including everything from evidentiary objections to motions for mistrial. When a self-represented defendant is unable to participate in these matters, he loses control over his defense. And, under *McKaskle*, standby counsel should not speak instead of the self-represented defendant at bench conferences. Standby counsel's participation in bench conferences also jeopardizes the jury's perception of the defendant as representing himself. Granted, these are factual determinations that should be made on a case-by-case basis. But participation of standby counsel at bench conferences to the self-represented defendant's exclusion and over the defendant's objection runs a high risk of violating the defendant's *Faretta* rights.

In *Snowden v. State*,[33] the trial court granted Snowden's motion for self-representation and appointed standby counsel. But the trial court ruled that Snowden could not leave counsel table and required the standby attorney to attend all sidebar conferences.[34] The Delaware Supreme

**29.** *Chapman*, 265 S.W.3d at 169–70 (citations omitted) ("[A] pro se defendant proceeding with standby counsel has the right to determine what role, if any, standby counsel will perform.").

**30.** *McKaskle*, 465 U.S. at 177, 104 S.Ct. 944.

**31.** *Id.* at 178, 104 S.Ct. 944.

**32.** *See, e.g., Snowden v. State*, 672 A.2d 1017 (Del.1996); *People v. Rosen*, 81 N.Y.2d 237, 597 N.Y.S.2d 914, 613 N.E.2d 946 (1993); *Oses v. Commonwealth of Massachusetts*, 961 F.2d 985 (1st Cir.1992) (holding that the de-

fendant's exclusion from bench conferences was one of three sets of errors, which in combination led to a violation of Oses's right to self-representation); *Frantz v. Hazey*, 533 F.3d 724 (9th Cir.2008) (holding that unconsented-to exclusion from a chambers conference would so substantially reduce Frantz's ability to shape and communicate his own defense as to violate his *Faretta* rights and remanding for an evidentiary hearing on whether Frantz consented).

**33.** 672 A.2d 1017 (Del.1996).

**34.** *Id.* at 1020.

Court held that this violated Snowden's Sixth Amendment right to represent himself. Contrary to *McKaskle*, standby counsel spoke instead of Snowden; and the jury's perception that Snowden represented himself may have been adversely affected.[35] The court reversed for a new trial because Snowden's right of self-representation afforded him the opportunity to address the court at appropriate points in the trial, including sidebar conferences.

 In *Snowden*, no reasons were given for the trial court's decision to exclude the self-represented defendant from bench conferences. The analysis by the Delaware Supreme Court was based purely on the Sixth Amendment right of self-representation and the *McKaskle* guidelines.[36] The case at hand is not so clearly pigeonholed because the trial court based its restrictions on Allen's flight risk and potential to disrupt the proceedings. The Commonwealth argues that the trial court would have been justified in denying Allen's right to self-representation altogether under *Hummel* and that the trial court acted within its discretion by excluding Allen from bench conferences. So the question before us is whether standby counsel's sole participation in bench conferences is justified by the trial court's findings that Allen was a flight risk and that Allen could potentially disrupt court proceedings. For the following reasons, we hold that it is not.

 We first review the trial court's findings that Allen was a flight risk and was a risk for disrupting the proceedings for abuse of discretion.[37] We must then examine the restrictions imposed by the trial court for appropriateness under the Sixth Amendment.

The trial court did not abuse its discretion in finding Allen was a flight risk. Only a few months before, Allen left the courthouse while in custody and on trial for different charges; he was not apprehended for several days. At the time of the trial of the present case, Allen had been tried and convicted of second-degree escape and being a first-degree PFO. He was serving a sentence of twenty years' imprisonment for that conviction. Allen was also awaiting trial on several other indictments. We cannot say the trial court abused its discretion by deeming Allen a flight risk.

Nor did the trial court abuse its discretion in determining that Allen could disrupt court proceedings. The trial court had Allen removed from a pretrial hearing for interrupting others. And the trial court had extensive interactions with Allen on his various cases. So the trial court was in the best position to determine that Allen posed a risk of disrupting the trial.

 Despite finding that Allen was a flight risk and could potentially be disrup-

---

**35.** *Id.* at 1021–22.

**36.** Likewise, the trial court in *People v. Rosen* provided no reason for refusing to permit Rosen to attend bench conferences. 597 N.Y.S.2d 914, 613 N.E.2d at 950. And the New York Court of Appeals held that "[a] defendant in a criminal trial who has exercised the right to self-representation may not be arbitrarily and categorically excluded from sidebar conferences." *Id.* at 915, 613 N.E.2d at 947.

**37.** When a trial court determines that a defendant is unable or unwilling to abide by courtroom protocol, it may deny a request for self-representation. A trial court may also deny such a request if it is made purely as a tactic to disrupt or delay proceedings. These decisions of the trial court are reviewed for abuse of discretion. *Hummel*, 306 S.W.3d at 53. We have also applied the abuse of discretion standard to a trial court's decision to appoint hybrid counsel over a borderline competent defendant's objection. *Major*, 275 S.W.3d at 722.

tive, the trial court chose not to impose the extreme sanction of denying outright Allen's request to represent himself. This decision was entirely appropriate. Allen's behavior was not extreme or violent, nor was he charged with violent crimes. So while Allen was a flight risk, he was not a security risk.[38] And the trial court protected against any potential disruption from Allen by directing Hudson to be prepared to take over the trial.[39] So while the trial court found that Allen posed a risk for flight and disruption, the court did not find it necessary to deny Allen's right to self-representation altogether.[40]

Instead, the trial court appointed Hudson as standby counsel. When the trial court took Allen's motion to proceed pro se under advisement, the trial judge indicated that he had to decide whether to dismiss Hudson altogether, keep her as lead or co-counsel, or appoint her as whisper or standby counsel. Ultimately, the trial court determined that Allen could represent himself with assistance from Hudson as standby counsel. This determination was completely within the trial court's discretion.[41]

Once making the decision to appoint standby counsel, the trial court was faced with devising a plan to reconcile standby counsel's role with Allen's *Faretta* right to represent himself. We recognize that a
> trial judge may be required to make numerous rulings reconciling the participation of standby counsel with a *pro se* defendant's objection to that participation; nothing in the nature of the *Faretta* right suggests that the usual deference to "judgment calls" on these issues by the trial judge should not obtain here as elsewhere.[42]

Nor does a defendant's right to appear pro se "categorically silenc[e] standby counsel."[43] "*Faretta* rights are not infringed when standby counsel assists the *pro se* defendant in overcoming routine procedural or evidentiary obstacles.... Nor are they infringed when counsel merely helps to ensure the defendant's compliance with basic rules of courtroom protocol and procedure."[44]

But once the trial court decided that Hudson would serve purely as standby counsel, the court was not free to exclude Allen from bench conferences. We hold that Allen's Sixth Amendment right to

---

**38.** Although Allen was not placed in handcuffs or shackles during trial, the trial court restricted his movement in the courtroom by requiring him to present his case from counsel table, unlike opposing counsel, who had free movement about the courtroom during trial.

**39.** This practice was condoned by the Supreme Court in *Wake v. Barker*, 514 S.W.2d 692, 697 (Ky.1974) ("[I]n the event the accused has entered upon the trial with assistance of counsel on a specified limited basis, that counsel may subsequently be required by the trial court to take such charge of the defense as may be required by reason of the disorderly, disruptive or disrespectful conduct of the accused.").

**40.** By way of comparison, Allen's actions were mild compared to those of the defendant

in *Hummel*, 306 S.W.3d at 48. Among other things, Hummel admitted to counsel that his request for self-representation was a ploy to disrupt the proceedings, accused defense counsel of giving him child pornography, refused to enter the courtroom, ripped buttons off his shirt, and destroyed some of defense counsel's discovery documents.

**41.** As discussed above, trial courts can appoint standby counsel over a defendant's objections.

**42.** *Partin*, 168 S.W.3d at 29 (quoting *McKaskle*, 465 U.S. at 177 n. 8, 104 S.Ct. 944).

**43.** *McKaskle*, 465 U.S. at 177, 104 S.Ct. 944.

**44.** *Id.* at 183, 104 S.Ct. 944.

counsel was violated when the trial court permitted Allen to represent himself without hybrid counsel and then barred him from a critical stage of the criminal proceedings.

■ Allen's exclusion from bench conferences implicates his Sixth Amendment right to be represented by counsel at all critical stages of a criminal proceeding.[45] "It is well-settled that a criminal defendant has a right to be represented by counsel that extends beyond the actual trial to every critical stage of the proceedings." [46] We conclude that Allen was unrepresented at the bench conferences.

Allen acted as his own counsel at trial and was prohibited from attending the bench conferences. Although Hudson was present at the bench conferences, she did not represent Allen because she was standby counsel only. *Standby counsel* is defined as "[a]n attorney who is appointed to be prepared to represent a pro se criminal defendant if the defendant's self-representation ends. [ ] The standby counsel may also provide some advice and guidance to the defendant during the self-representation.—Also termed *advisory counsel.*" [47] *Advisory counsel* is "[a]n attorney retained merely to give advice on a particular matter, as distinguished from one (such as trial counsel) actively participating in a case." [48]

Standby counsel is distinguished from hybrid counsel, which is an attorney that acts as co-counsel with the defendant.[49] Kentucky courts view hybrid counsel as

---

**45.** We have previously examined the right to counsel at all critical stages in conjunction with the right of self-representation under different factual circumstances from Allen's case. In *Stone v. Commonwealth*, 217 S.W.3d 233 (Ky.2007), the trial court granted the defendant's request to represent himself for a period of thirteen months prior to trial before holding a *Faretta* hearing. The question before the Court was "whether Appellant's rights under the Sixth Amendment of the federal Constitution and Section Eleven of the Kentucky Constitution were violated by the thirteen-month period during which Appellant represented himself absent a valid waiver and notwithstanding his expressed desire for hybrid representation." *Id.* at 237. And because Stone was granted his right of self-representation for trial, the case turned on whether he was denied counsel at a critical stage of his prosecution. *Id.* at 238. *See also Menefield v. Borg*, 881 F.2d 696, 699–700 (9th Cir.1989) (holding that the right to counsel attaches to the motion for a new trial and analyzing whether the trial court erred in denying appellant's post-trial request for appointment of counsel).

**46.** *Stone*, 217 S.W.3d at 237 (citing *Henderson v. Commonwealth*, 396 S.W.2d 313 (Ky.1965), and *United States v. Wade*, 388 U.S. 218, 224, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)).

**47.** Black's Law Dictionary (9th ed.2009).

**48.** *Id.*

**49.** *See Deno*, 177 S.W.3d at 758 (referring to a defendant's request for cocounsel as requesting the right to hybrid representation); *Baucom v. Commonwealth*, 134 S.W.3d 591, 592 (Ky.2004) ("... the right to act as co-counsel, *i.e.*, the right to 'hybrid representation.' "); Joseph A. Colquitt, *Hybrid Representation: Standing the Two–Sided Coin on its Edge*, 38 Wake Forest L.Rev. 55, 56–57 (2003) ("[Hybrid representation] consists of the concurrent representation by counsel for an accused and the accused appearing pro se. In other words, in a case of hybrid representation, the accused and an attorney essentially function as 'co-counsel.' "); Joshua L. Howard, *Hybrid Representation and Standby Counsel: Let's Clear the Air for the Attorneys of South Carolina*, 52 S.C. L.Rev. 851, 852 ("Standby counsel is a role assumed by an attorney who agrees to assist a pro se defendant with his defense and possibly to represent him if the defendant loses or voluntarily relinquishes his pro se status. Hybrid representation arises when a defendant represents himself pro se and is also represented by counsel. In hybrid representation, the self-represented defendant and the attorney act as co-counsel for the defense.").

self-representation, in part.[50] That is, the defendant makes "a limited waiver of counsel whereby he acts as co-counsel with a licensed attorney. The defendant specifies the extent of legal services he desires, but undertakes the remaining portion of his defense pro se." [51]

■ We agree with the Sixth Circuit Court of Appeals that "[g]enerally, standby counsel does not satisfy a defendant's Sixth Amendment right to counsel." [52] As the definition of *standby counsel* indicates, "[s]tandby counsel does not . . . 'represent' the *pro se* defendant." [53] The trial court held that Allen competently waived his right to an attorney. Hudson's role was advisory only. From that point on, Allen was representing himself—acting as his own attorney. As his own attorney, he had the right to be present at all critical stages of the criminal proceeding.

■ "[A]n analysis of a critical stage necessarily involves a retrospective inquiry as to the nature and consequences of each step in the proceedings. Particular attention must be given to how counsel would have benefited the defendant at these moments." [54] A portion of a criminal proceeding is a critical stage if a reasonable likelihood exists that the defendant was prejudiced by the absence of counsel.[55]

■ The bench conferences at Allen's trial were critical stages of the criminal proceeding.[56] Numerous bench conferences took place at Allen's trial. The issues addressed at the conferences included a motion for a continuance, the excusal of jurors for cause, and evidentiary challenges by both Allen and the Commonwealth. That a reasonable likelihood exists that Allen was prejudiced by the absence of counsel—Allen or co-counsel—from these bench conferences is certain.

We point out the contents of the conference regarding Allen's motion for a continuance as an example. On the morning of trial, it came to light that Allen had not received a copy of the trial court's order granting Allen his right to self-representation. Allen also informed the court that his discovery documents were missing. On these bases, Allen requested a continu-

---

**50.** *Swan v. Commonwealth*, 384 S.W.3d 77, 93 (Ky.2012).

**51.** *Stone*, 217 S.W.3d at 236 n. 1; *see also Major*, 275 S.W.3d at 718 ("Section 11 serves as the basis of the right to hybrid counsel, or the right to be heard 'by himself and counsel.' ").

**52.** *King v. Bobby*, 433 F.3d 483, 490 (6th Cir.2006). As noted by the Sixth Circuit, some support exists "for the proposition that in certain circumstances standby counsel can satisfy a defendant's right to counsel if counsel actively and substantially assists the defendant." *Compare United States v. Oreye*, 263 F.3d 669, 672 (7th Cir.2001) (holding that if standby counsel actively participates in a defendant's defense as would active counsel, a defendant's Sixth Amendment right to counsel is satisfied) *with United States v. Davis*, 269 F.3d 514, 520 (5th Cir.2001) ("Standby assistance of counsel, however, does not satisfy the Sixth Amendment right to counsel.

The assistance of standby counsel, no matter how useful to the court or the defendant, cannot qualify as the assistance of counsel, required by the Sixth Amendment." *United States v. Taylor*, 933 F.2d 307, 312 (5th Cir. 1991)).

**53.** *United States v. Mills*, 895 F.2d 897, 904 (2d Cir.1990) (holding that "the court erred in not permitting Mills to make his own legal argument" but finding reversal was not required).

**54.** *Stone*, 217 S.W.3d at 238.

**55.** *Id.* (citing *Van v. Jones*, 475 F.3d 292, 313 (6th Cir.2007)).

**56.** *See United States v. Minsky*, 963 F.2d 870, 874 (6th Cir.1992) ("We hold that the *ex parte* sidebar conference violated Minsky's right to a fair trial and was a Sixth Amendment violation.").

ance.[57] The trial court discussed Allen's motion with Hudson and the prosecutor at the bench while Allen was restricted to counsel table. The trial court denied Allen's motion and the trial proceeded.

We find that a reasonable likelihood exists that Allen was prejudiced by the absence of counsel at this bench conference. It is reasonably likely that counsel, Allen, or an attorney representing him, could have presented articulable and persuasive reasons why a continuance was necessary. Instead, the trial court ruled on the motion without hearing any argument from Allen.

After determining that Allen should not approach the bench for conferences, the trial court should have appointed co-counsel to represent Allen at these critical stages. Allen's actions may have forfeited his right to move freely about the courtroom, but that does not mean he could go unrepresented at the bench conferences.

In *Hummel,* we held that a defendant can forfeit his right to represent himself. Although Hummel forfeited his right to be his own counsel, he was still represented by an attorney at all critical stages of his criminal proceedings.[58] The Ninth Circuit Court of Appeals also has held that when a pro se defendant acts out during trial, he "does not forfeit his right to representation. . . . He merely forfeits his right to represent himself in the proceeding."[59] In *United States v. Mack,* Mack was representing himself without the aid of standby counsel. When Mack became obstreperous, the trial court removed him from the courtroom, "which left nobody to represent him. . . . In practical effect, [Mack] had been removed as his own counsel and nobody stepped in to fill the gap."[60] The Ninth Circuit held that "[i]t is beyond doubt that Mack wound up deprived of counsel—himself or anyone else."[61] This was a structural error requiring reversal.[62] So, too, was Allen left unrepresented at critical stages when the trial court prohibited him from attending bench conferences.

The Commonwealth, as well as the dissent, points us to *State v. Davenport,*[63] in which the New Jersey Supreme Court found that Davenport's right to represent himself was not violated by his exclusion from sidebar conferences. The court held that under the facts of that case, Davenport controlled the content and presentation of his defense; and the jury was fully aware of that reality.[64] The court found standby counsel's participation at bench conferences in place of Davenport appropriate "in light of the valid security concerns attendant to the trial of an alleged drug kingpin facing a life sentence. . . ."[65] But the court never discussed the implica-

---

57. All of this information was relayed to the trial court by Hudson.

58. The trial court in *Hummel* appointed hybrid counsel: "The court then instructed defense counsel to present the defense that Appellant wanted, under Appellant's direction. Counsel then did so, conferring with Appellant during direct- and cross-examination." *Hummel,* 306 S.W.3d at 50–51.

59. *United States v. Mack,* 362 F.3d 597, 601 (9th Cir.2004).

60. *Id.* at 601.

61. *Id.* at 602.

62. *But see Davis v. Grant,* 532 F.3d 132 (2d Cir.2008) (holding that state's failure to appoint standby counsel to represent pro se defendant when he was involuntarily removed from courtroom for disruptive conduct was not contrary to or an unreasonable application of clearly established federal law).

63. 177 N.J. 288, 827 A.2d 1063 (2003).

64. *Id.* at 1073.

65. *Id.* at 1072. We note the difference of the flight risk posed by Allen and the security risk posed by Davenport—an alleged drug kingpin charged with assault in addition to other drug- and weapon-related charges.

tions of the defendant's lack of representation at critical stages of his criminal trial.[66] So we do not find *Davenport* persuasive.[67]

We pause here to distinguish clearly *Davenport* from the case before us. The dissent "find[s] this case more akin to *Davenport*" because the "trial court detailed security concerns." Respectfully, we must disagree. Initially, a brief description of the facts and proceedings of *Davenport* is in order. *Davenport* involved the arrest of a 33–year–old male, who was over six feet tall and weighed over 300 pounds, and during the arrest lunged for a shoebox found to contain two firearms. Davenport was a "drug kingpin" charged with "twenty-five drug- and weapon-related offenses, the most serious of which was first-degree leading a narcotics trafficking network." [68] As detailed previously, Allen was arrested and charged with theft offenses; and the record is factually inconclusive regarding Allen's involvement, past or present, in violent activity or any supposed violent disposition. Further, Allen was not in possession of a weapon at the time of arrest.[69] The record describes Allen as a slightly over five-feet, 130 pound, fifty-one-year-old male. Simply stated, on the facts, this case is *not* akin to *Davenport*. The trial court did not find Allen to be a security concern, and there are no "legitimate security concerns" detailed on the record that would necessitate precluding Allen from participating in bench conferences.[70] Admittedly, Allen was found to be a flight risk. But a finding of propensity for flight or escape is not the equivalent of a finding of a safety concern for individuals in the courtroom.

**66.** The Rhode Island Supreme Court also held that a defendant's right to self-representation was not violated by exclusion from sidebar conferences in *State v. Thornton*, 800 A.2d 1016 (R.I.2002). We find this case substantially different from Allen's. In *Thornton*, the defendant was charged with "horrendous and vicious acts of alleged violence" and had an "extensive past criminal record, which included convictions for past crimes of violence." *Id.* at 1032. And the trial court gave the defendant the choice of attending bench conferences in handcuffs, and the defendant instead requested that standby counsel argue for him at bench conferences.

**67.** The New Jersey Supreme Court also stated that "whatever erosions were occasioned on defendant's *Faretta* right were tolerable, and did not rise to the level of a violation of the right." *Id.* at 306–07, 827 A.2d 1063. This indicates that the court subscribed to the view of *McKaskle* articulated by the Second Circuit Court of Appeals. In *Mills*, 895 F.2d 897, the Second Circuit opined that the trial court erred in not permitting the pro se defendant to make his own legal argument and by excluding the pro se defendant from attending bench conferences. Relying heavily on the statement in *McKaskle* that "[i]n determining whether a defendant's *Faretta* rights have been respected, the primary focus must be on whether the defendant had a fair chance to present his case in his own way," the court concluded that the errors did not substantially erode the defendant's *Faretta* rights. *Id.* at 904–05. The Tenth Circuit rejected this limited reading of *McKaskle* in *United States v. McDermott*, 64 F.3d 1448, 1453–54 (10th Cir. 1995). Even were we to adopt the Second Circuit's reasoning, the incursion into Allen's *Faretta* rights was substantial enough to require a new trial.

**68.** *Davenport*, 827 A.2d at 1066.

**69.** We acknowledge that Allen was previously convicted of being a felon in possession of a firearm. Allen's collateral attack of this conviction remains undetermined. The Court of Appeals vacated the trial court's order denying Allen's motion for relief from the judgment under RCr 11.42. *See Ricky Allen v. Commonwealth*, 2010–CA–001717–MR (Ky. App. Oct. 19, 2001). To this Court's knowledge, no further action has been taken.

**70.** *Id.* at 1075 ("In circumstances in which trial courts determine that defendants should not be allowed at sidebar, we expect that the legitimate security concerns that necessitate such a finding will be detailed clearly on the record.").

Contrary to the arguments presented by the dissent or the Commonwealth, *Davenport* actually supports our holding today. The dissent uses selective quotation to buttress its argument but, in doing so, misses the point of *Davenport*. While Davenport, like Allen, was prohibited from participating in sidebars, the trial judge in *Davenport* ensured that Davenport was given a proper opportunity to present his case. The trial judge, on a particular occasion, following a discussion between standby counsel and the prosecuting attorney, "dismissed the jury and proceeded to address with defendant the entire contents of the sidebar discussion. . . ." [71] Additionally, "on several occasions [standby counsel] left the sidebar conference to relay information to or from [Davenport], or to determine from [Davenport] whether he had an objection to a proposed course of action." [72] There is simply no mention of such conduct in Allen's case. Indeed, nearly the opposite took place during Allen's trial. Standby counsel did not request if Allen wished to relay any message to the trial judge or prosecuting attorney, whether Allen wished to make an argument or objection, and the trial judge did not dismiss the jurors to hear from Allen. The totality of *Davenport* can almost be viewed as the method trial judges should model when attempting to balance the defendant's right to proceed pro se against the safety and effectiveness of the courtroom. [73] Cer-

tainly, *Davenport* does not support the weight the dissent gives it. While Davenport was not "deprive[d] . . . of meaningful participation in the content of the sidebars through his standby counsel representative," [74] Allen certainly was. Again, this case is not akin to *Davenport*.

■ The Commonwealth also argues that although the trial judge labeled Hudson standby counsel, her presence at the bench conferences necessarily entailed representation of Allen in that limited role. So, according to the Commonwealth, Allen was not left unrepresented at any critical stage of the trial. The record here contradicts the Commonwealth's argument.

The record in this case supports the conclusion that Allen was left unrepresented at the bench conferences. The trial court repeatedly made clear that Hudson's role as standby counsel was advisory only. The trial court's order specifically identified Hudson as standby counsel for Allen, stating that she would be available to Allen for assistance before and during the trial but would not interfere with Allen's *Faretta* rights in order that Allen could present his case in his own way. The trial court informed the jury that Allen had chosen to represent himself and would not have an attorney to represent him. The court explained that while Hudson was an attorney, she was present only to answer

71. *Id.* at 1072. We would add that according to the court in *Davenport*, this was not an isolated incident. "The record indicate[d] that a number of times when substantive information was being discussed at sidebar, the court excused the jurors and provided defendant with a restatement to ensure his full inclusion." *Id.* at 1068.

72. *Id.* at 1068.

73. In fact, the court in *Davenport* offered suggestions for how trial courts, in the future, should handle such situations so that "defen-

dants can participate in sidebars to the fullest extent possible without compromising courtroom security." *Id.* at 1075. The Court suggested that this "may be accomplished, in appropriate circumstances, through defendant's physical presence at sidebar when safety is not a concern, through minimal use of standby counsel as a conduit, by sending the jury to the jury room and having the discussion in open court . . ., or even through advances in courtroom technology." *Id.*

74. *Id.* at 1075.

Allen's questions and assist Allen with approaching the bench and handling witness documents. The trial court also reminded Hudson of her role during the course of trial. For instance, the trial court reminded Hudson that while she could assist Allen with his juror strikes, the ultimate decisions lay with Allen. And when Hudson moved the court for a directed verdict at the close of the Commonwealth's case, the trial court would not entertain the motion until Allen so moved the court.

Hudson was placed in an awkward situation by being restricted to an advisory capacity but, at the same time, being present at the bench conferences to Allen's exclusion. At some bench conferences, she made limited statements on Allen's behalf. But many times, she remained silent at the conferences and took on more of a messenger role. For instance, during many examinations of individual jurors at the bench during voir dire, the trial court ruled to excuse jurors and instructed Hudson to inform Allen about what occurred. In another instance, the prosecutor objected to a question posed by Allen in cross-examination. Allen started to reply to the prosecutor's objection, but the trial court interrupted him and called counsel to the bench. Hudson explained the purpose behind Allen's line of questioning, but she did not argue as to why the questioning was relevant. The trial court sustained the prosecutor's objection. Allen had no opportunity to participate at these bench conferences, and it cannot be said that Hudson argued on his behalf.

More alarmingly, on at least two occasions, Hudson argued against Allen's interests. On the morning of trial, Allen asked for a continuance because he had not received a copy of the trial court order granting his motion to represent himself and because he lost his discovery. When Hudson relayed this information to the trial court, she clearly conveyed her exasperation with Allen. She informed the trial court that although Allen did not have the documents with him, she had given him the discovery twice. Hudson was not representing Allen's interests at this bench conference. Rather, her frustration and tone of voice made clear that she did not consider a continuance appropriate or necessary.

Hudson also argued against Allen's interests at a bench conference during trial. Allen was cross-examining a witness and sought to introduce evidence through the witness. Hudson approached the bench to relay Allen's request to introduce the evidence. Hudson told the trial court that she tried to explain to Allen that although he could ask the witness about certain information, the evidence could not be introduced. The trial court affirmed Hudson's assessment and denied Allen's request. At this conference, Hudson successfully argued against Allen's interests. So we are not convinced by the Commonwealth's argument that Hudson was representing Allen at the bench conferences.

■ We also note that the trial judge took upon himself many of the tasks that would be required of Allen's counsel.[75] We commend the trial court for attempting to provide Allen a fair trial. But a defendant "does not have a constitutional right to receive personal instruction from the trial judge on courtroom procedure. Nor does the Constitution require judges to take over chores for a *pro se* defendant that

---

75. For example, during a detective's testimony, the judge called two bench conferences to inform the prosecutor that his line of questions was improper. The trial court also called a bench conference because the prosecutor sought to introduce evidence that the court said had not been properly authenticated.

would normally be attended to by trained counsel as a matter of course." [76] The trial court's actions here underscore the perception that the trial court itself did not view Hudson as representing Allen. If Hudson were representing Allen at the bench conferences, it is unlikely the trial court would have found it necessary to intercede on Allen's behalf.

In *United States v. McDermott*,[77] the Tenth Circuit Court of Appeals similarly rejected "the government's argument that Mr. McDermott's counsel was transformed into hybrid counsel (going from adviser/helper to representative). . . ." [78] The court found that the record left no doubt that McDermott represented himself while the attorney was standby counsel only.[79] The same is true here—Allen represented himself while Hudson's role as standby counsel was advisory only. She did not transform into hybrid counsel while attending the bench conferences.

 Whether this is viewed as a violation of Allen's right of self-representation or right to be represented at a critical stage, the error is not susceptible to harmless error analysis. "It is settled that a complete absence of counsel at a critical stage of a criminal proceeding is a *per se* Sixth Amendment violation warranting reversal of a conviction, a sentence, or both, as applicable, without analysis for prejudice or harmless error." [80] Nor is the denial of the right of self-representation "amenable to 'harmless error' analysis.

The right is either respected or denied; its deprivation cannot be harmless." [81]

The trial court's error in Allen's case was of constitutional magnitude and requires reversal. The trial court was faced with the task of creating a plan that would simultaneously protect Allen's right of self-representation and minimize the risk of flight and disruption. The trial court appropriately decided not to impose the extreme sanction of denying outright Allen's right to represent himself. But, unfortunately, the plan devised by the trial court left a gap in Allen's representation at critical stages of the trial—the bench conferences. So we must reverse the convictions.

## C. The Commonwealth did not Introduce a Prior–Dismissed Conviction at the Sentencing Phase.

The jury found Allen guilty of being a PFO 2. A second-degree persistent felony offender "is a person who is more than twenty-one (21) years of age and who stands convicted of a felony after having been convicted of one (1) previous felony." [82] At the sentencing phase, the Commonwealth introduced a Laurel Circuit Court judgment convicting Allen of possession of a firearm by a convicted felon. The judgment was entered in January 2000.[83]

 Allen argues that evidence concerning this judgment was inadmissible for purposes of finding him a PFO 2 because

---

**76.** *McKaskle*, 465 U.S. at 183–84, 104 S.Ct. 944.

**77.** 64 F.3d 1448.

**78.** *Id.* at 1453.

**79.** *Id.* ("His standby counsel . . . did nothing more than what standby counsel might be expected to do: consult, make some objections, help with the admission and admissibility of exhibits, and make some motions.").

**80.** *Stone*, 217 S.W.3d at 238 (citing *Van*, 475 F.3d at 311–12).

**81.** *McKaskle*, 465 U.S. at 178 n. 8, 104 S.Ct. 944.

**82.** KRS 532.080(2).

**83.** An order amending the judgment was entered in April 2000.

the Court of Appeals vacated the judgment. This issue is unpreserved, and Allen requests review for palpable error.[84] We find that no error occurred, let alone palpable error.

The opinion of the Court of Appeals regarding Allen's January 2000 conviction reviewed the trial court's decision not to grant an evidentiary hearing on Allen's RCr 11.42 claim of ineffective assistance of counsel. The Court of Appeals reversed the trial court's order denying Allen's motion and remanded to the trial court for an evidentiary hearing. It is undisputed that the hearing on Allen's RCr 11.42 claim never occurred, and the judgment of conviction was never vacated.

■ In *Melson v. Commonwealth,*[85] this Court held that

a prior conviction may not be utilized under KRS 532.055 (the truth-in-sentencing statute) or under KRS. 532.080 (the persistent felony offender act) unless:

(1) The time for appealing the convictions has expired without appeal having been taken, or

(2) Matter of right appeal has been taken pursuant to § 115 of the Constitution of Kentucky and the judgment of conviction has been affirmed.

This does not apply to collateral attacks, such as motions under RCr 11.42, nor does it apply to pending motions for discretionary review.[86] So, under *Melson,* a prior conviction may be used for a PFO conviction even though a defendant has filed an RCr 11.42 motion to attack collaterally that conviction.[87] The use of Allen's January 2000 conviction for PFO purposes was not error.

### III. CONCLUSION.

Sufficient evidence supported Allen's convictions of burglary, criminal mischief, and theft. Allen's PFO 2 conviction was also valid. But Allen's exclusion from bench conferences at trial violated his Sixth Amendment rights. So we reverse the judgment and remand to the trial court for further proceedings.

All sitting. ABRAMSON, KELLER, NOBLE, and VENTERS, JJ., concur. SCOTT, J., dissents by separate opinion in which CUNNINGHAM, J., joins.

---

**84.** Alternatively, Allen claims that we should review for regular error because *Napue v. Illinois,* 360 U.S. 264, 269–72, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), requires the state to correct false evidence that is material to punishment. We need not address this contention because, as discussed below, the conviction introduced at Allen's trial was not false evidence.

**85.** 772 S.W.2d 631, 633 (Ky.1989).

**86.** We decline Allen's invitation to disregard the statement of the law in *Melson* as dicta. While *Melson* involved the use of prior convictions for purposes of a truth-in-sentencing hearing, the Court explicitly applied the concept to the use of prior convictions for purposes of the PFO statute. And the reasoning is equally applicable. An RCr 1.1.42 motion is a collateral attack on a judgment as opposed to a direct appeal, regardless of whether the Commonwealth seeks to use the judgment in a truth-in-sentencing hearing or to bring a PFO charge.

**87.** Nor does the PFO statute, KRS 532.080, require the time for an RCr 11.42 motion to pass before a conviction can be used to convict a defendant of being a PFO. "Under the plain language of KRS 532.080(2), a defendant is convicted of a previous felony that can serve as the basis of a PFO 2 charge if (1) a sentence to a term of imprisonment of one year or more or a sentence to death was imposed, (2) the defendant was over 18 years old at the time he committed the offense, and (3) one of the five alternatives listed under subsection (c) is met." *Commonwealth v. Derringer,* 386 S.W.3d 123, 128 (Ky.2012).

SCOTT, J., dissenting:

I must respectfully dissent from the majority's opinion because I disagree that the trial court's order, requiring the participation of standby counsel at bench conferences on Appellant's behalf, violated his Sixth Amendment rights by leaving him unrepresented at critical stages of the trial. Given Appellant's disrespectful and disruptive conduct, and past criminal record, the order was thoroughly justified.

The Sixth Amendment guarantees criminal defendants the right to self-representation, *Faretta v. California*, 422 U.S. 806, 834, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), so long as the criminal defendant is "able and willing to abide by rules of procedure and courtroom protocol." *McKaskle v. Wiggins*, 465 U.S. 168, 173, 104 S.Ct. 944, 79 L.Ed.2d 122(1984). The right to self-representation is "not a . . . license not to comply with relevant rules of procedural and substantive law." *Faretta*, 422 U.S. at 834, 95 S.Ct. 2525. Moreover, a disruptive defendant may have his right to self-representation terminated if he does not comply with courtroom protocol. *Id.* at 834 n. 46, 95 S.Ct. 2525. "Even at the trial level, therefore, the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as' his own lawyer." *Martinez v. Court of Appeal of Cal.*, 528 U.S. 152, 162, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000).

In the present case, the balance of the two competing interests tipped heavily in favor of the Commonwealth. And given Appellant's extensive criminal background and past courtroom behavior, the trial judge did not abuse his discretion in ruling that Appellant would not be allowed to approach the bench during sidebar conferences.

In addition to the present case, Appellant faced six additional indictments. By trial, Appellant had already been sentenced to twenty years' imprisonment for escape in the second degree and first degree PFO. The trial judge also had first-hand knowledge of Appellant's "frequent and uninvited interruptions in the court room," having had to personally order Appellant be removed from a pretrial conference for disruptive behavior. Most importantly, the trial judge knew that Appellant was a "flight risk." He had already escaped once from the sheriffs custody in the same courthouse.

Although it was within the trial judge's discretion to completely deny Appellant's request for self-representation, *Hummel v. Commonwealth*, 306 S.W.3d 48, 53 (Ky. 2010) (citing *Faretta*, 422 U.S. at 834–35 n. 46, 95 S.Ct. 2525 (1975)), he instead implemented what he believed to be the least intrusive means of preserving Appellant's right to self-representation. The trial judge required only that Appellant remain at the table during bench conferences and that standby counsel keep Appellant apprised of what transpired during those conferences.

In particular, a violation of defendant's Sixth Amendment right to self-representation may only be found if defendant can show that the participation of standby counsel either 1) deprived him of actual control over the case presented to the jury or 2) destroyed the perception of the jury that defendant was representing himself and in control of the case. *See McKaskle*, 465 U.S. at 178–79, 104 S.Ct. 944. The majority now holds that standby counsel's participation in bench conferences due to the exclusion of the *pro se* defendant may jeopardize that defendant's control over the case and the perception of defendant's control by the jury. However, it must be pointed out that the exclusion should be viewed "in the context of the trial as a whole." *United States v. Mills*, 895 F.2d

897, 905 (2d Cir.1990). The majority concedes as much when it states that "these are factual determinations that should be made on a case-by-case basis."

Appellant's brief does not contend that his exclusion from bench conferences destroyed his control over his case or the jury's perception that he was handling his own case. Rather, Appellant alleges that the trial court infringed on his "right to self-representation and [his] right to have his counsel present during critical portions of the trial."

To support its position that Appellant's Sixth Amendment rights were violated, the majority cites to three cases finding error in the refusal of trial judges to allow a *pro se* criminal defendant to participate in bench conferences. *See United States v. McDermott*, 64 F.3d 1448, 1452 (10th Cir. 1995) (finding error where defendant was excluded from bench conferences because he lacked legal knowledge of procedural and evidentiary rules); *Oses v. Massachusetts*, 961 F.2d 985, 986 (1st Cir.1992) (holding that it was improper to exclude defendant, who was also bound and gagged, from bench conferences without so much as a hearing); *Snowden v. State*, 672 A.2d 1017, 1018–22 (Del.1996) (finding error where no reason whatsoever was given for defendant's exclusion from sidebar conferences). While I agree with the majority that the cases they cite involved violations of the Sixth Amendment right to self-representation, these cases, however, are distinguishable from the present case because none of them involve a defendant who posed a flight risk or threat to courtroom security.

I find this case more akin to *State v. Davenport*, 177 N.J. 288, 827 A.2d 1063 (2003), in which the New Jersey Supreme Court examined each of the three cases above as well as *Mills*, 895 F.2d 897. The *Davenport* court upheld security measures

the trial court imposed that prevented the *pro se* defendant from leaving the defense table and required standby counsel to represent him at bench conferences. 827 A.2d at 1072–75. *Davenport* held that the exclusion of a criminal defendant from bench conferences is proper when there are "legitimate security concerns" that are "detailed clearly on the record." *Id.* at 1075.

The majority attempts to distinguish *Davenport* by arguing that the defendant in *Davenport* was *more* of a security risk than Appellant. In support of this argument, the majority relies on the *Davenport* defendant's young age, large physical stature, and numerous drug- and weapon-related charges. Comparing Appellant to the *Davenport* defendant, the majority states, "Allen was arrested and charged with theft offenses; and the record is factually inconclusive regarding Allen's involvement, past or present, in violent activity or any supposed violent disposition." Yet, police testimony at trial indicated that the theft was discovered when officers were called to Appellant's home to handle a domestic dispute in which Appellant had threatened his girlfriend and her son. Further testimony was offered to show that Appellant had specifically threatened to beat his girlfriend's son's brains out with a crowbar.

The majority further attempts to distinguish Appellant from the *Davenport* defendant by arguing that "Allen was not in possession of a weapon at the time of arrest." Nonetheless, part of the basis for Appellant's PFO conviction was that he was previously convicted of being a felon in possession of a firearm—a fact which the trial judge was aware of when he determined that Appellant would be excluded from bench conferences. Putting aside value judgments on the relative dangerousness of Appellant, evidence of Ap-

pellant's threats, possession of firearms, and prior escape from custody established an adequate basis for the trial judge to determine Appellant presented legitimate security concerns.

Because I believe that an exclusion from bench conferences must be looked at in the context of the trial and parties as a whole, I disagree with the majority that Appellant's right to be represented at critical stages of the proceeding was violated. The trial court was in the best position to determine how to balance the defendant's Sixth Amendment rights against the integrity of the proceedings and courtroom security concerns.

As I believe the trial judge did not abuse his discretion in ruling that Appellant would be excluded from bench conferences, I would uphold Appellant's convictions. Thus, I respectfully dissent.

CUNNINGHAM, J., joins.