RENDERED: MARCH 18, 2010
TO BE PUBLISHED

$$\mathfrak{Supreme~Court~of~Kentucky}$$

FINAL

2008-SC-000801-MR

DATE 4-8-10 Kelly Klaber D.C.

ALAN HUMMEL                                                                    APPELLANT


APPEAL FROM KENTON CIRCUIT COURT
V.          HONORABLE GREGORY M. BARTLETT, JUDGE
NO. 06-CR-00580


COMMONWEALTH OF KENTUCKY                                          APPELLEE


**OPINION OF THE COURT BY JUSTICE NOBLE**

**<u>AFFIRMING</u>**

A Kenton Circuit Court jury convicted Appellant, Alan Hummel, of first-degree rape, third-degree rape, and of being a second-degree persistent felony offender. On appeal, he argues that his conviction must be reversed because the trial court denied him his right to proceed pro se or as hybrid counsel. For the reasons set forth below, his conviction is affirmed.

**I. Background**

The issue of self-representation first arose before trial, when defense counsel moved for the court to determine the scope of Appellant's representation, or in the alternative, to allow him to proceed pro se. The court then asked if Appellant wanted to represent himself, and defense counsel responded that he requested only to cross-examine witnesses. Defense counsel then told the court that Appellant had admitted his request was "a ploy to

disrupt decorum of court." The court ultimately said defense counsel would question witnesses unless Appellant wanted to represent himself, and the issue was not discussed further at that time.

Appellant's desire to disrupt the court was confirmed by a letter he wrote to his counsel. This letter was nonsensical, expressed paranoid thoughts, and as defense counsel described, concerned "this idea that he's going to somehow disrupt the court proceedings." The letter regarded a supposed conspiracy against Appellant and explained how disrupting the court was his only means to fight it. Based on this letter, the court ordered a competency hearing.

At this hearing, the evaluating psychiatrist, Dr. Greg Perry, testified that this letter was Appellant's idea of a joke and indicative of his temperamental, impulsive, "game playing" behavior. Appellant told Dr. Perry that he acted this way because he was "able to get away with these things" in a courtroom setting and because "it gets me what I want." The court found Appellant competent, consistent with Dr. Perry's opinion.

The day before trial, Appellant made several oral motions, including a motion to compel defense counsel to call particular witnesses. The court denied each in turn. Apparently upset at this, Appellant then accused defense counsel of giving him child pornography. A few minutes later, Appellant threw papers at counsel, exclaiming "take your child porn, I don't want it."[1]

The issue of self-representation next arose on the morning of trial. Defense counsel told the court that Appellant wanted to suddenly change the

---

[1] Appellant was found in prison with pictures of children's faces superimposed on adult bodies, captioned "future victim." There is no evidence suggesting his counsel gave him these pictures, and his counsel denied doing so.

defense strategy. Counsel had repeatedly discussed with Appellant the defense strategy, which was to impeach the complaining witness with her prior statements, and Appellant had not previously objected. Now, on the morning of trial, Appellant decided his defense should be that he was in Michigan during the alleged first-degree rape. He complained that his counsel "won't bring forth the witnesses that I have told him to." Counsel responded that substantial evidence undermined their testimony. Appellant then interjected, "I'll just represent myself, I'll need a continuance, so I—," at which point the court interrupted him.

The court then held a hearing as prescribed by *Faretta v. California*, 422 U.S. 806 (1975). At this hearing, Appellant said he wanted to represent himself "only on the basis that I'm allowed to call my own witnesses." The court ruled that Appellant could not represent himself, listing three reasons: "I think it would not be in his best interest"; "I don't think he's skilled enough"; and "I don't think he's got the control of himself to do that." The court then instructed defense counsel to present the defense that Appellant wanted, under Appellant's direction. Counsel then did so, conferring with Appellant during direct- and cross-examination.

During the Commonwealth's case, the complaining witness, M.D., testified that she began dating Appellant in January 2004. At that time, she was fourteen years old and he was twenty four. Their relationship became sexual the next month, and when M.D.'s parents found out, she broke up with him. They remained apart until March 2006, when Appellant asked her for money. On April 27, 2006, they met behind M.D.'s house. M.D. testified that

3

when she went into the house, Appellant grabbed her, punched her, told her "I'm going to do this because I still love you," and then forcibly raped her on the kitchen floor.

After the close of the Commonwealth's case, defense counsel presented the new defense theory. Specifically, he called Appellant's friend, James Kemplin, who testified that he and Appellant were in Michigan from mid-April to mid-May 2006, covering the date of the alleged first-degree rape. (Kemplin's testimony, however, was rebutted by two police officers. One testified that he pulled Kemplin's car over in Covington, Kentucky the day before the rape; the other testified he was arrested and detained in Kenton County two days later.)

On the second day of trial, Appellant became very difficult to deal with. He refused to enter the courtroom, talk to his attorneys, or tell them whether he wanted to testify. He ripped buttons off his shirt and destroyed some of defense counsel's discovery documents. Eventually, Appellant was coaxed into the courtroom and stated he did not want to testify.

Defense counsel then said he had no more witnesses. Appellant then exclaimed, "I do, and you are not my representation anymore, bitch, so you can take your ass off my case." Appellant said he wanted to call two other people: another friend, who was in Albuquerque, New Mexico, and had not been subpoenaed, and his mother, who was in Dayton, Ohio. Counsel explained that their testimony would be redundant or detrimental to the new defense. No *Faretta* hearing was held and neither witness was called.

Ultimately, the jury convicted Appellant of first-degree rape, third-degree rape, and of being a second-degree persistent felony offender. He was

4

sentenced to life imprisonment and appeals to this court as a matter of right, Ky. Const. 110(2)(b).

## II. Analysis

Appellant's sole contention on appeal is that the trial court erroneously denied his requests to represent himself. The Commonwealth responds that Appellant never timely and unequivocally requested such representation and thus was not entitled to it. Alternatively, the Commonwealth asserts that the trial court could deny the requests anyway because Appellant was unable or unwilling to abide by courtroom protocol.

With respect to whether Appellant's requests were unequivocal, it is notable that his complaints all concerned witnesses that he wanted to call and his displeasure at counsel's refusal to do so. Arguably, at least prior to trial, Appellant was not requesting to waive counsel so much as he was underscoring his frustration that counsel would not call certain witnesses. *Cf. Winstead v. Commonwealth*, 283 S.W.3d 678, 683–84 (Ky. 2009) (characterizing defendant's assertion "I have a better chance of defending myself" as "not so much a request to do so as it was . . . underscoring what he perceived as counsel's lack of effort").

Whatever may have been equivocal, however, was made perfectly clear when Appellant asserted on the day of trial: "I'll just represent myself." Indeed, following that statement, the court held a *Faretta* hearing and eventually denied Appellant's request for three reasons other than the request being equivocal. Implicit in having the hearing and listing these reasons is the finding that Appellant made a proper, unequivocal request. Otherwise, there

5

was no reason to have a *Faretta* hearing and to explain why the request was denied for those reasons. Accordingly, this case turns on whether the court's reasons were proper.

The trial court listed three reasons for denying Appellant's request: it was not in his best interest, he was not skilled enough, and he could not control himself. The first two reasons are not proper. First, if the court could deny a request because it believed it would be against a defendant's interest, then the oft-quoted maxim "a man who represents himself has a fool for a client and a fool for a lawyer" would seem to make granting these requests always discretionary, which is clearly not the case. And second, a defendant's "technical legal knowledge" or skill is not relevant in determining whether he may waive counsel. *Faretta*, 422 U.S. at 835.

The court's third reason—that Appellant could not control himself—is potentially a valid reason. "[A]n accused's right to self-representation is not absolute and unfettered." *Wilson v. Mintzes*, 761 F.2d 275, 280 n.8 (6th Cir. 1985). This right exists "to affirm the dignity and autonomy of the accused and to allow presentation of what may, at least occasionally, be the accused's best possible defense." *McKaskle v. Wiggins*, 465 U.S. 168, 176–77 (1984). The right does not exist, however, to disrupt decorum of court, to abuse the judicial system, to manipulate the trial process, or to serve as a tactic for delay. *E.g., United States v. Frazier-El*, 204 F.3d 553, 560 (4th Cir. 2000) (citing *Faretta*, 422 U.S. at 834 n.46; *United States v. Singleton*, 107 F.3d 1091, 1102 (4th Cir. 1997); *United States v. Lawrence*, 605 F.2d 1321, 1324–25 (4th Cir. 1979)).

A court should always, of course, vigilantly protect a defendant's constitutional rights. *Lawrence*, 605 F.2d at 1325. However, given that "it was never intended that any of these rights be used as a ploy to frustrate the orderly procedures of a court in the administration of justice," *id.*, the U.S. Supreme Court has held that the "interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer," *Martinez v. Court of Appeal of Cal.*, 528 U.S. 152, 161 (2000).

Indeed, as the U.S. Supreme Court has previously said in the context of the right to be present at trial, another important constitutional right:

> It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case.

*Illinois v. Allen*, 397 U.S. 337, 343 (1970). The Court then went on to hold that, based on the record before it, removing the defendant from the courtroom was "completely within" the trial court's discretion, given the defendant's disruptive behavior. *Id.* at 347.

Similarly, in the context of the right to self-representation, the U.S. Supreme Court has said that a defendant has the right "provided only that . . . he is able and willing to abide by rules of procedure and courtroom protocol." *McKaskle*, 465 U.S. at 173. This is because, as is the case with other constitutional rights, "[t]he right to self-representation is not a license to abuse the dignity of the courtroom." *Faretta*, 422 U.S. at 834 n.46. Consequently, a

7

defendant can forfeit the right to self-representation, and the court "may [thus] terminate self-representation by a defendant who deliberately engages in serious and obstructionist conduct." *Faretta*, 422 U.S. at 834–45 n.46; *Commonwealth v. Means*, 907 N.E.2d 646, 659 n.18 (Mass. 2009); *accord State v. Carruthers*, 35 S.W.3d 516, 546 n.26 (Tenn. 2000) (collecting cases holding that the right to representation cannot be used to manipulate, delay, or otherwise disrupt trial).

For this reason, the rule in other jurisdictions is that a request for self-representation may be properly denied if the defendant is unable or unwilling to act with decorum in court as he conducts his own defense and instead seeks only to disrupt or delay proceedings. *E.g., United States v. Dujanovic*, 486 F.2d 182, 187 (9th Cir. 1973); *State v. Plunkett*, 934 P.2d 113, 116–17 (Kan. 1997); *Leonard v. State*, 486 A.2d 163, 170–71 (Md. 1985); *People v. Dennany*, 519 N.W.2d 128, 136 (Mich. 1994); *Vanisi v. State*, 22 P.3d 1164, 1171 (Nev. 2001); 21A Am. Jur. 2d *Criminal Law* § 1156 (2006); 22 C.J.S. *Criminal Law* § 374 (2006). In these jurisdictions, a trial court's determination to this effect is reviewed for an abuse of discretion. *E.g., Vanisi*, 22 P.3d at 1171; 22 C.J.S. *Criminal Law* § 374.

This issue is one of first impression for Kentucky. We find the reasoning of other jurisdictions persuasive, and we now adopt the same rule. A request for self-representation may be denied upon a determination that the defendant is unable or unwilling to abide by courtroom protocol as he conducts his defense, or if it is made purely as a tactic to disrupt or delay proceedings. A trial court's determination in this regard is reviewed for an abuse of discretion.

8

Turning to this case, the trial court did not abuse its discretion in determining that Appellant could not "control . . . himself" while conducting his own defense. Indeed, the record shows that Appellant's behavior in court was substantially and repeatedly disruptive. For example, when Appellant was upset at one of the court's rulings, he interrupted proceedings, first to accuse defense counsel of giving him child pornography and later to throw papers at him. Appellant wrote a disturbing letter, apparently as a joke, which caused the court to order a competency evaluation and hold a competency hearing. At one point, Appellant ripped his shirt, and he destroyed some of defense counsel's discovery documents. Several times, the court reprimanded him for his conduct, and it threatened to hold him in contempt if he continued to misbehave. Basically, Appellant was disruptive throughout the proceedings.

Further, defense counsel told the court that Appellant admitted he made his initial request as "a ploy to disrupt decorum of court." And Dr. Perry testified at the competency hearing that Appellant sought to disrupt the court because "it gets [him] what [he] want[s]" and because he believed he was "able to get away with these things" in a courtroom. According to Dr. Perry, this was consistent with Appellant's psychological profile. This, coupled with Appellant's admissions, shows he presented a danger of disrupting the trial.

Additionally, as the Commonwealth points out in its brief, the timing of Appellant's requests suggests he made them only as a delay tactic. Appellant's trial was initially scheduled for March 13, 2007. The court granted his first continuance request, resetting the trial for June 5, 2007. Just prior to this trial date, Appellant informed counsel that he wanted to call additional

9

witnesses, seeking another continuance. Later, the court allowed his first attorney to withdraw based on Appellant's statement that he was hiring a new, private attorney; when Appellant failed to do so, the court appointed a new public defender and reset the trial date for September 11, 2007. This trial ended in mistrial, and the court scheduled the retrial for February 5, 2008.

On the day before this trial, Appellant wrote the disturbing letter to his counsel as an apparent joke, which caused the court to schedule a competency hearing and delay trial once more. Approximately one week before this new trial date, Appellant moved pro se to have the case suspended. Then, the day before trial, he made numerous pro se motions, including for the judge to recuse himself, for a change of venue, and for reassignment of counsel. Next, on the morning of trial, he decided to lodge a full-scale objection to his defense for the first time, eventually telling the court "I'll just represent myself, I'll need a continuance . . . ." Finally, on the second day of trial, he declared he wanted to call two more witnesses, both of whom happened to be out of state, which would have required yet another delay.

A request for self-representation may be denied if it is made as a tactic to delay proceedings. *E.g.*, *United States v. Smith*, 780 F.2d 810, 811 (9th Cir. 1986); *Vanisi*, 22 P.3d at 1170; 22 C.J.S. *Criminal Law* § 366. The timing of Appellant's pretrial acts, which almost always were immediately before each trial date, strongly suggests he was using them as a tactic to delay proceedings. And his acts during trial either included an explicit continuation request ("I'll need a continuance" on the morning of trial) or would have required one (suddenly requesting to call out-of-state witnesses on the second day of trial).

10

Although the motive to delay was not a specific finding the trial court made when denying Appellant's request to represent himself, his repeated attempts to delay the trial are rather glaring and were certainly disruptive. Appellant could have made any of these motions or raised his complaints well in advance of each of the trial dates. Instead, he chose to bring these issues up right before each trial date, requiring a series of delays.

Given Appellant's consistently disruptive behavior, it cannot be said that the trial court abused its discretion in concluding that he was unable or unwilling to abide by courtroom protocol. It can reasonably be inferred from his past conduct—and, indeed, his own admissions—that he presented a danger of disrupting and delaying the trial if allowed free rein in conducting his own defense. The trial court properly determined that Appellant would abuse the courtroom process and required that he direct his defense through an intermediary, his attorney.

### III. Conclusion

For the foregoing reasons, the judgment of the Kenton Circuit Court is affirmed.

Minton, C.J.; Abramson, Cunningham, Schroder and Venters, JJ., concur. Scott, J., concurs in result only.

11

COUNSEL FOR APPELLANT:

Karen Shuff Maurer
Assistant Public Advocate
Department of Public Advocacy
100 Fair Oaks Lane, Suite 302
Frankfort, Kentucky  40601


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General

Bryan Darwin Morrow
Office of the Attorney General
1024 Capital Center Drive
Frankfort, Kentucky  40601