IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39751-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| SAVELIN SAVA SOCHIRCA, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Savelin Sochirca appeals his conviction for first degree animal cruelty. He argues the trial court erred when granting his request to represent himself and erred again by construing the animal cruelty statute in a manner that did not acknowledge his right to injure a dog attacking his chickens. We reject his arguments and affirm. In affirming, we construe *State v. Burn*s, 193 Wn.2d 190, 203, 438 P.3d 1183 (2019), as permitting us to review the record beyond the colloquy to support the trial court's finding that Sochirca made a knowing, intelligent and voluntary waiver of the right to counsel.

FACTS

Although Savelin Sochirca provides a statement of facts favorable to his appeal, he fails to assign error to any of the trial court's findings or argue that any are unsupported by substantial evidence. We therefore paraphrase the trial court's findings. *See State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014) (Unchallenged findings are treated as true on appeal.).

Sochirca was at his home when the neighbor's dog, Millie, got into his chicken coop. Millie had on previous occasions gotten into the coop and killed Sochirca's chickens. When Sochirca saw Millie, he got his BB gun, went into the coop, and shot dozens of steel BBs into Millie's head, including her eyes. Sochirca left the coop, thinking Millie would die. Later, Sochirca checked on Millie and saw she was not dead. He put Millie on a lead and led her away from the coop, onto a pile of snow to die.

Millie's owner, Christopher Buchmann, noticed his dog was missing. Buchmann followed her tracks in the snow to Sochirca's house and asked Sochirca if he had seen Millie. Sochirca told Buchmann he had shot her and took Buchmann to Millie, who was bleeding, but still alive.

Buchmann carried Millie home and drove her to a nearby veterinarian. An X-ray showed there were at least 40 BBs in her head. Millie underwent surgery, survived, but is now blind.

2

PROCEDURE

The State charged Sochirca with first degree animal cruelty.  At his arraignment, the trial court, aided by a Russian interpreter, advised Sochirca of his constitutional rights, appointed a public defender, told Sochirca he was charged with first degree animal cruelty, and that the charge was an unranked felony with a maximum penalty of five years in prison and a $10,000 fine.  Throughout these advisements, the trial court asked Sochirca if he understood, and Sochirca repeatedly responded he did.

At various hearings, Sochirca asked for a Moldovan interpreter.  The court eventually granted his request.  The interpreter, certified in Romanian, explained that she speaks "Romanian from Romania," while Sochirca speaks "Romanian from Moldova." 1 Rep. of Proc. (RP) (Aug. 8, 2022) at 9.  She further explained that Moldova is a former Republic of the Soviet Union, and there are some words she does not understand.  She told the court that she and Sochirca had reached an understanding: if he did not understand something, he would stop her; but if the word was a legal term, Sochirca would ask the judge to simplify the term so he could understand.

Sochirca, nevertheless, insisted he wanted a Moldovan interpreter.  The interpreter responded that there was no real difference between the two languages.  She later explained the differences were dialectic, such as the various dialects of English, and said she understood Sochirca 100 percent.

3

With the new interpreter present, defense counsel advised the trial court that

Sochirca had filed a motion to proceed pro se with standby counsel. The following

colloquy occurred:

> MR. SOCHIRCA: I would like to represent myself.
> THE COURT: Okay. And, before you decide that officially, I need to go over a few things with you. You need to understand that if you proceed without an attorney you would have to act as an attorney would in court. That means following the rules of evidence, filing motions as an attorney would, and essentially being responsible for your own case without legal assistance. *I wouldn't be appointing you standby counsel*, so you would essentially have to do everything by yourself. And, the law requires me to tell you that you would be far better off being represented by an attorney than to represent yourself. How would you like to proceed?
> MR. SOCHIRCA: I would like to represent myself.
> THE COURT: You do have the right to do that. Do you feel that in any way you're being pressured or coerced into that decision to represent yourself?
> MR. SOCHIRCA: No.
> THE COURT: Okay. All right. The Court will find a knowing, intelligent and voluntary waiver of counsel.

1 RP (Aug. 8, 2022) at 11-12 (emphasis added).

At times throughout the proceedings, Sochirca repeated his request for a

Moldovan interpreter. These requests most often occurred when the trial court had used a

legal term or phrase. The trial court explained, "If it's legal questions, then the

interpreter isn't the issue." 1 RP (Aug. 22, 2022) at 25.

The interpreter assured the court, "most of the people I interpret for here in

Washington State are from Moldova and there's never been any complaint in any

4

court . . . . This is the first time when somebody refuses my services and claims that they don't understand me." 1 RP (Aug. 22, 2022) at 28. The court told Sochirca, "Well, I don't know what to tell you, because I've watched you here in the past on multiple occasions and you seem to understand fine." 1 RP (Aug. 22, 2022) at 23. At one point, when the trial court explained in layman's terms what an omnibus hearing was and Sochirca said he still did not understand, the court advised, "If you had an attorney, you would get a lot more help. Will you let me give you an attorney?" 1 RP (Aug. 22, 2022) at 30. Sochirca responded, "No." 1 RP (Aug. 22, 2022) at 30.

Sochirca waived his right to a jury trial. The trial court heard the evidence and entered a written decision with findings and conclusions, convicting Sochirca of first degree animal cruelty. Sochirca appeals to this court.

ANALYSIS

Sochirca raises two arguments on appeal. We analyze each argument in turn.

A.     *The trial court properly granted Sochirca's request to represent himself*

Sochirca first argues the trial court erred when it granted his request to proceed pro se because his waiver was not knowing and intelligent. We disagree.

"Criminal defendants have an explicit right to self-representation under the Washington Constitution and an implicit right under the Sixth Amendment to the United States Constitution." *State v. Madsen*, 168 Wn.2d 496, 503, 229 P.3d 714 (2010) (citing

5

WASH. CONST. art. I, § 22; *Faretta v. California*, 422 U.S. 806, 819, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975)). We indulge every reasonable presumption against a defendant's waiver of their right to counsel. *Id.* at 504. We review a trial court's determination of whether a defendant effectively waived their right to counsel for an abuse of discretion. *Id.* "Discretion is abused if a decision is manifestly unreasonable or 'rests on facts unsupported in the record or was reached by applying the wrong legal standard.'" *Id.* (quoting *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)).

A trial court is faced with a multistep process in evaluating a defendant's request to proceed pro se. *Burn*s, 193 Wn.2d at 203. The first step is whether the defendant's request is unequivocal and timely. *Id.* Sochirca argues his request was equivocal because his written motion included a request to appoint standby counsel. We disagree.

A request to proceed pro se must be unequivocal in the context of the record as a whole. *State v. Stenson*, 132 Wn.2d 668, 741, 940 P.2d 1239 (1997). Here, despite Sochirca's written request to proceed pro se *with standby counsel*, the court clearly advised Sochirca it would *not* be appointing standby counsel for him. Sochirca expressed no equivocation but affirmed he wanted to represent himself.

The next step in evaluating a defendant's request to proceed pro se is whether the defendant's waiver is knowing, intelligent, and voluntary. *Burns*, 193 Wn.2d at 203. Sochirca argues his request was not knowing and intelligent because he was not informed

6

(1) of the nature and classification of the charge, (2) the maximum penalty upon

conviction, (3) that he would be bound by technical rules in the presentation of his case,

and (4) that a conviction would result in him being barred from raising chickens.  As

explained below, he was advised of the first three items, and the fourth was not required.

In *Burns*, the court set forth a comprehensive statement that controls most of these

issues:

> The method for determining whether a defendant understands the risks of
> self-representation is a colloquy on the record.  The colloquy should
> generally include a discussion of the nature of the charges against the
> defendant, the maximum penalty, and the fact that the defendant will be
> subject to the technical and procedural rules of the court in the presentation
> of his case.  In order to give direction to trial courts and create an adequate
> record for an appeal, our cases have suggested several additional,
> nonexhaustive factors to consider in the colloquy, including education,
> experience with the justice system, mental health, and competency.  The
> trial court may also look to the defendant's behavior, intonation, and
> willingness to cooperate with the court.  While the suggested factors are not
> exhaustive or sufficient individually, *the trial court must evaluate all of the
> information in front of it and use its discretion to determine whether the
> waiver is knowing, voluntary, and intelligent*, and to ensure a waiver is
> made with an understanding of the consequences and the seriousness of the
> charges, keeping in mind the presumption against the waiver of the right to
> counsel.

193 Wn.2d at 203-04 (emphasis added) (citations omitted).

We must first address an issue not raised in the briefs but raised during oral

argument: In determining whether the defendant's waiver is knowing, intelligent, and

voluntary, may we examine the record as a whole or only the colloquy.

7

There is nothing in our Supreme Court's precedent that suggests we are confined to the colloquy when deciding whether the trial court abused its discretion in finding a knowing, intelligent, and voluntary waiver of the right to counsel. In fact, the *Burns* court instructed the trial court to evaluate "all of the information in front of it" when it uses its discretion before permitting a defendant to waive the right to counsel. 193 Wn.2d at 203. If the trial court is instructed to consider the broad record in its determination, we should not confine ourselves to only the colloquy in determining whether the trial court abused its discretion. This is the strongest argument for permitting us to review the broad record in our determination.

*City of Bellevue v. Acrey*, 103 Wn.2d 203, 211, 691 P.2d 957 (1984), does not suggest otherwise. The *Acrey* court noted that a colloquy is the best means of ensuring that a defendant understands the risks of self-representation. The court then stated, in the absence of a colloquy, an appellate court "will look at any evidence on the record that shows defendant's actual awareness of the risks of self-representation." *Id.* There is nothing in this language that confines an appellate court to the colloquy in its review of the trial court's discretionary determination.

Our dissenting colleague—despite noting that lower appellate cases are consistent with our approach here—disagrees. He would construe *Acrey* as not permitting review of the broader record where a colloquy occurs. As noted above, we disagree. The purpose

8

of our review is to determine whether a defendant made a knowing, intelligent, and voluntary waiver of his right to counsel. An effective waiver is more apt to occur if there is a colloquy rather than if there is no colloquy. But the dissent's limitation of our review to only the colloquy when a colloquy occurs, makes it more difficult, not less, to find an effective waiver. Construing *Acrey* in the manner suggested by our colleague would impede, not further, a determination of whether an effective waiver occurred.

Here, during his arraignment, Sochirca was informed of the charge, its unclassified ranking, and that the maximum penalty was five years in prison and a $10,000 fine. Months later, during the colloquy, the court advised Sochirca that if he proceeded without counsel he would be bound by the rules of evidence and be required to file motions as an attorney would, and he was warned, "you would be far better off being represented by an attorney than to represent yourself." 1 RP (Aug. 8, 2022) at 12. Despite this, Sochirca said he wanted to represent himself. Later that day, after Sochirca said he did not understand a legal term, the court advised him to reconsider his decision to proceed without counsel, and asked Sochirca if he would like counsel reappointed. Sochirca responded, "No." 1 RP (Aug. 8, 2022) at 30.

From the record, reasonable minds might differ as to whether Sochirca made a knowing and intelligent waiver of his right to counsel. But that is not the standard of review. Rather,

9

We give great deference to the trial court's discretion because the trial court is in a favorable position to the appellate courts in evaluating a request to proceed pro se. Trial judges have more experience with evaluating requests to proceed pro se and have the benefit of observing the behavior, intonation, and characteristics of the defendant during a request.

*Burns*, 193 Wn.2d at 202 (citing *State v. Curry*, 191 Wn.2d 475, 485, 423 P.3d 179 (2018)). We conclude that the trial court did not abuse its discretion in finding that Sochirca made an effective waiver of his right to counsel.[1]

*The collateral consequences of a conviction generally need not be addressed*

We next address Sochirca's argument that his decision to proceed pro se was not knowing and intelligent because the trial court failed to advise him that a conviction would result in him being unable to own or possess animals. Sochirca cites *Acrey* for the proposition that a judge's inquiry must be sufficiently thorough to uncover facts that could be essential to an individual defendant's choice as to whether to proceed pro se.

Sochirca stretches *Acrey* too far. *Acrey* does require a sufficient inquiry, encourages trial courts to engage in a colloquy with the defendant, and describes what

---

[1] Our conclusion should not be mistaken as an endorsement of a truncated colloquy. We strongly encourage trial courts to conduct a much more extensive inquiry—an inquiry that includes the considerations expressed by the *Burns* court, which we detailed earlier in a lengthy quote. This will be best accomplished by keeping a hard copy of a detailed colloquy on the bench. In those rare instances where a trial court is caught off guard by a defendant's sudden request to proceed without counsel and, if a hard copy of the colloquy is not readily available, the trial court should set the defendant's request for a later hearing.

such a colloquy requires: "That colloquy, at a minimum, should consist of informing the defendant of the nature and classification of the charge, the maximum penalty upon conviction and that technical rules exist which will bind defendant in the presentation of his case." *Acrey*, 103 Wn.2d at 211.

Here, Sochirca knew the maximum penalty if he was convicted was five years in prison and a $10,000 fine. Knowing that the penalty could be severe, he still chose to represent himself. With the exception of deportation, collateral consequences of a conviction are rarely as significant as a lengthy incarceration. Sochirca's proposed rule would, for all practical purposes, require a court to go through each collateral consequence of a conviction to ensure that no consequence would deter a defendant from self-representation. We reject the opportunity to impose such a rule.

*The trial court found that Sochirca understood the proceedings*

We now address Sochirca's final argument, that the court failed to consider his low level of verbal comprehension and understanding of abstract concepts. We disagree. The trial court observed Sochirca and remarked, "I've watched you here in the past on multiple occasions and you seem to understand fine." 1 RP (Aug. 22, 2022) at 23.

"We give great deference to the trial court's discretion because the trial court is in a favorable position to the appellate courts in evaluating a request to proceed pro se. Trial judges have more experience with evaluating requests to proceed pro se and have

11

the benefit of observing the behavior, intonation, and characteristics of the defendant

during a request." *Burns*, 193 Wn.2d at 202.

We conclude the trial court did not abuse its discretion when it found that

Sochirca's waiver of his right to counsel was knowing, intelligent, and voluntary.

B.      *First degree animal cruelty proved*

Sochirca next argues he did not violate the first degree animal cruelty statute

because the law allows him to kill or injure a dog he sees attacking his chickens.  This

argument requires us to construe the first degree animal cruelty statute.  We review

questions of statutory construction de novo.  *State v. Bergstrom*, 199 Wn.2d 23, 34, 502

P.3d 837 (2022).

A person commits animal cruelty in the first degree "when, except as authorized in

law, he or she intentionally (a) inflicts substantial pain on, (b) causes physical injury to,

or (c) kills an animal by a means causing undue suffering or while manifesting an

extreme indifference to life."  RCW 16.52.205(1).

Emphasizing "except as authorized in law," Sochirca argues that his actions were

lawful because RCW 16.08.020 makes it lawful to kill a dog when it is seen injuring

domestic animals, including chickens.  We agree that Sochirca had a right to kill Millie

when he saw her attacking his chickens.  But RCW 16.08.020 does not allow one to

12

No. 39751-3-III
*State v. Sochirca*

attempt to kill an animal by a means causing undue suffering, such as shooting over 40

steel BBs into a dog's head.

Affirmed.

_____
Lawrence-Berrey, C.J.

I CONCUR:

_____
Cooney, J.

13

No. 39751-3-III

JOHNSON, J.P.T.[1] (dissenting) — While the exercise of a constitutional right is far

from a laughing matter, a common joke among attorneys is that "a man who represents

himself has a fool for a client."[2] Indeed, Washington courts have been blunt when

describing this choice:

> "Unlike the right to the assistance of counsel, the right to dispense
> with such assistance and to represent oneself is guaranteed not because it is
> essential to a fair trial but because *the defendant has a personal right to be
> a fool*."

*State v. Fritz*, 21 Wn. App. 354, 359, 585 P.2d 173 (1978) (emphasis omitted and added)

(quoting *People v. Salazar*, 74 Cal. App. 3d 875, 888, 141 Cal. Rptr. 753 (1977)).

Because of the tension between the constitutional rights of self-representation and

the right to proceed with adequate counsel, both the Washington Supreme Court and the

United States Supreme Court have "directed courts to indulge in '"*every reasonable

presumption*" against a defendant's waiver of [their] right to counsel.'" *State v. Burns*,

193 Wn.2d 190, 202, 438 P.3d 1183 (2019) (quoting *In re Det. of Turay*, 139 Wn.2d 379,

---

[1] Brandon L. Johnson, an active judge of a court of general jurisdiction, is serving as a judge pro tempore of this court pursuant to RCW 2.06.150(1).

[2] This quote is most often attributed to Abraham Lincoln. It is also referred to as an "oft-quoted maxim." *See Hummel v. Commonwealth*, 306 S.W.3d 48, 52 (Ky. 2010). The United States Supreme Court refers to it as an "adage" that is the "product of years of experience by seasoned litigators." *Kay v. Ehrler*, 499 U.S. 432, 437-38, 111 S. Ct. 1435, 113 L. Ed. 2d 486 (1991).

No. 39751-3-III
*State v. Sochirca* (Dissent)


396, 986 P.2d 790 (1999) (quoting *Brewer v. Williams*, 430 U.S. 387, 404, 97 S. Ct.

1232, 51 L. Ed. 2d 424 (1977))).

Despite the clear direction from our higher courts, the majority here nonetheless

looks past an inadequate colloquy with Mr. Sochirca, supplements those deficiencies

with references to hearings that occurred months prior,[3] and concludes Mr. Sochirca's

waiver was knowing and intelligent. Rather than look for ways to get around this plain

deficiency, the matter should be reversed on the dispositive ineffective waiver of counsel

and remanded for the trial court to engage in a meaningfully adequate colloquy.

Therefore, I must respectfully dissent.

Washington law is clear on the waiver of a defendant's right to counsel.

Our Supreme Court recently explained the process, including a discussion on what

information should be discussed with the defendant:

> In evaluating a defendant's request to go pro se, the trial court is faced with a multistep process. The first step is a combined determination of whether the request is unequivocal and timely. . . .
> Where a request is unequivocal and timely, a trial court must then determine if the request is knowing, voluntary, and intelligent. *The method for determining whether a defendant understands the risks of self-representation is a colloquy on the record. The colloquy should generally include a discussion of the nature of the charges against the defendant, the maximum penalty, and the fact that the defendant will be subject to the technical and procedural rules of the court in the presentation of his case.*

---

[3] Mr. Sochirca was arraigned on April 11, 2022. The hearing in which the trial court allowed him to represent himself occurred on August 8, 2022—days shy of four months later.

In order to give direction to trial courts and create an adequate record for an appeal, our cases have suggested several additional, nonexhaustive factors to consider in the colloquy including education, experience with the justice system, mental health, and competency. The trial court may also look to the defendant's behavior, intonation, and willingness to cooperate with the court. While the suggested factors are not exhaustive or sufficient individually, *the trial court must evaluate all of the information in front of it and use its discretion to determine whether the waiver is knowing, voluntary, and intelligent, and to ensure a waiver is made with an understanding of the consequences and the seriousness of the charges, keeping in mind the presumption against the waiver of the right to counsel.* So long as a trial court conducted an adequate inquiry into a defendant's request and there is a factual basis for the court's finding that the waiver of counsel was not knowing, intelligent, and voluntary, the trial court's discretionary decision will not be disturbed on appeal.

*Burns*, 193 Wn.2d at 203-04 (emphasis added) (citations omitted).

Here, a colloquy occurred between the trial court and Mr. Sochirca on the record:

> MR. SOCHIRCA: I would like to represent myself.
> THE COURT: Okay. And, before you decide that officially, I need to go over a few things with you. You need to understand that if you proceed without an attorney you would have to act as an attorney would in court. That means following the rules of evidence, filing motions as an attorney would, and essentially being responsible for your own case without legal assistance. I wouldn't be appointing you standby counsel, so you would essentially have to do everything by yourself. And, the law requires me to tell you that you would be far better off being represented by an attorney than to represent yourself. How would you like to proceed?
> MR. SOCHIRCA: I would like to represent myself.
> THE COURT: You do have the right to do that. Do you feel that in any way you're being pressured or coerced into that decision to represent yourself?
> MR. SOCHIRCA: No.
> THE COURT: Okay. All right. The Court will find a knowing, intelligent and voluntary waiver of counsel.

1 Rep. of Proc. (RP) (Aug. 8, 2022) at 11-12.

The record shows that the trial court addressed the application of court rules and procedures, and also confirmed that Mr. Sochirca was not being pressured. Mr. Sochirca's request was also unequivocal. And no one asserts it was not timely. Thus, the substantive question is whether his waiver was knowing and intelligent.[4] This requires a deeper analysis of *City of Bellevue v. Acrey*, 103 Wn.2d 203, 691 P.2d 957 (1984), as it is frequently cited on this topic, particularly for the principle that the reviewing court can look beyond the colloquy to determine whether a waiver was knowing and intelligent.

In *Acrey*, our Supreme Court discussed application of *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), and how differing federal circuit courts were, or were not, requiring a colloquy on the record. The *Acrey* court held:

> In our judgment, the trial court should assume responsibility for assuring that decisions regarding self-representation are made with at least minimal knowledge of what the task entails. The United States Supreme Court recognized this 36 years ago in *Von Moltke v. Gillies*, [332 U.S. 708, 723-24, 68 S. Ct. 316, 92 L. Ed. 309 (1948),] where the Court stated:
>> [A] judge must investigate as long and as thoroughly as the circumstances . . . demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to

---

[4] The majority addresses Mr. Sochirca's claim that he did not understand the proceedings due to language barriers and difficulty with the interpreter. *See* Majority at 3-5, 10-11. I do not address this issue because the colloquy was inadequate regardless of any claimed language issue, and this court must only address the issues necessary to resolve the appeal. *Clark County v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 177 Wn.2d 136, 145, 298 P.3d 704 (2013) ("The court must address only those claims and issues necessary to properly resolving the case as raised on appeal by interested parties."). Because the waiver of counsel issue is dispositive, the other claims raised by Mr. Sochirca should not be addressed.

> waive this right does not automatically end the judge's
> responsibility.
>      In interpreting *Faretta*, we agree that a colloquy on the record is the
> preferred means of assuring that defendants understand the risks of self-
> representation. We strongly recommend such a colloquy as the most
> efficient means of limiting appeals. *That colloquy, at a minimum, should
> consist of informing the defendant of the nature and classification of the
> charge, the maximum penalty upon conviction and that technical rules exist
> which will bind defendant in the presentation of his case.*

103 Wn.2d at 210-11 (emphasis added) (second alteration in original).

Reviewing *Acrey* and *Burns*, it is clear that the trial court "should" conduct a

colloquy on the record and that the colloquy should, "at a minimum," include the nature

and classification of the charge, the maximum penalty upon conviction, and that technical

rules exist and apply to the defendant's presentation of their case. *Burns*, 193 Wn.2d at

203-04; *Acrey*, 103 Wn.2d at 210-11. The colloquy with Mr. Sochirca did not include this

"minimum" information because it did not include any discussion of the nature and

classification of the charge, nor its maximum penalty.

The majority opinion is not consistent with the holding in *Acrey*. Despite the

unequivocal pronouncements from our Supreme Court concerning the minimum

necessary colloquy, that the trial court bears responsibility for ensuring the defendant's

waiver is voluntary and intelligent, and the direction to use every reasonable presumption

against a waiver of counsel—the majority uses language in *Acrey* to avoid the plain

deficiency in the colloquy as a basis to look beyond the colloquy and supplement it with

other portions of the record. While it is true the Supreme Court discusses what to do in

No. 39751-3-III
*State v. Sochirca* (Dissent)

the event there is *not* a colloquy on the record, the majority misconstrues the court's

language.

 After "strongly recommend[ing]" a colloquy, the Supreme Court stated:

> Nonetheless, in cases *where no colloquy exists on the record*, this
> court will look at any evidence on the record that shows defendant's actual
> awareness of the risks of self-representation. However, in no case will
> mere evidence of a defendant's literacy, educational level, common sense,
> or prior experience with the criminal justice system be sufficient to show
> an awareness of these risks.
>  A defendant's background is certainly relevant to his ability to make
> a sensible, intelligent decision regarding self-representation. That
> background, however, is not relevant to show whether a sensible, literate,
> and intelligent defendant possesses the necessary information to make a
> meaningful decision as to waiver of counsel. The fact that a defendant is
> well educated, can read, or has been on trial previously is not dispositive
> as to whether he understood the relative advantages and disadvantages of
> self-representation in a particular situation.
>  In the *absence of a colloquy*, the record must somehow otherwise
> show that the defendant understood the seriousness of the charges and
> knew the possible maximum penalty. The record should also show that the
> defendant was aware of the existence of technical rules and that presenting
> a defense is not just a matter of telling one's story. *Accordingly, only
> rarely will adequate information exist on the record, in the absence of a
> colloquy, to show the required awareness of the risks of self-
> representation.*

*Acrey*, 103 Wn.2d at 211 (emphasis added) (citation omitted).

 It is worth repeating that this is a case where there is no "absence of a colloquy"

because a "colloquy exists on the record." However, the record shows this colloquy was

inadequate. The *Acrey* court did not hold that a subpar colloquy can be supplemented

with information provided at other hearings. Rather, it provides a mechanism of what can

6

be done if there is no record and then expressly warns there will only "rarely" be an adequate basis to substitute for the desired colloquy. *Id*.

The question before this court is whether to bolster an inadequate colloquy by looking to other portions of the record, or to hold that "should" "at a minimum" means what it plainly says. The issue is not whether to expand the requirement placed on the trial court, and I recognize this court has previously suggested implementing the more thorough colloquy used in federal courts that goes well beyond *Acrey* and *Burns*. *See State v. Christensen*, 40 Wn. App. 290, 295 & n.2, 698 P.2d 1069 (1985) ("By way of attempting to assist the state trial bench, we have set out in a footnote an amplified list of the questions used by the federal bench to explore the subject of waiver of legal representation by criminal defendants."). Adoption of the more thorough questioning used by federal courts is not being advanced here. Rather, the limited issue is whether a "colloquy" means a self-contained conversation between the trial court and the defendant, and what "minimum" topics must be addressed.

It is worth noting that the seminal cases at issue all discuss a "colloquy." They do not discuss whether the proceedings at large include the relevant information. "Colloquy" is not well defined in Washington case law. In a dissenting opinion on the topic of waiver of counsel, Judge Schultheis stated, "A colloquy is, by definition, a two-sided dialogue, not a one-sided lecture. For a colloquy to be meaningful, the trial judge must not only explain the responsibilities and jeopardy, but listen to the defendant's response and

7

reply accordingly." *State v. James*, 138 Wn. App. 628, 645-46, 158 P.3d 102 (2007)

(Schultheis, J., dissenting). By using "colloquy," it is made clear that the trial court

should be having a conversation with the defendant.[5]

Division Two of this court has held that a colloquy that does not include the

maximum penalty is reversible error when there is no record of the maximum penalty

being otherwise provided to the defendant. *State v. Howard*, 1 Wn. App. 2d 420, 429,

405 P.3d 1039 (2017).[6] This court reached the same conclusion in *State v. Winterer*,

No. 35854-2-III (Wash. Ct. App. May 30, 2019) (unpublished), https://www.courts.wa.

gov/opinions/pdf/358542_unp.pdf. After holding the colloquy was inadequate, we

searched the record and found it insufficient "to permit an inference of a valid waiver."

*Winterer*, slip op. at 8.

---

[5] Perhaps, in this era of a move toward plain language, "colloquy" should be abandoned and replaced with "conversation" so that the desired process is clear to everyone.

[6] Division Two later used *Howard* to hold that failure to inform of the maximum penalty rendered the waiver uninformed in a subsequent unpublished decision. *State v. Gebremariem*, No. 50421-9-II, slip op at 11 (Wash. Ct. App. June 26, 2018) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2050421-9-II%20Unpublished%20Opinion.pdf ("[U]nder *Howard* the failure to inform [Gebremariem] of his maximum sentence rendered his waiver of his right to counsel invalid.").

Adequacy of the waiver of counsel was again addressed by this court in

*State v. Nelson*, No. 37595-1-III, slip op. at 7 (Wash. Ct. App. Jan. 20, 2022)

(unpublished), https://www.courts.wa.gov/opinions/pdf/375951_unp.pdf, where a

majority held that the absence of a colloquy was not fatal because "this is one of those

*rare cases* where the record demonstrates that Nelson was well aware of the risks of self-

representation despite the lack of an effective colloquy." (Emphasis added.) Despite this

being a narrow postconviction issue of correcting the judgment and sentence, *Nelson*

drew a dissent that opined the majority failed to "indulge every reasonable presumption

against the waiver of fundamental rights." *Id*. at 9 (Fearing, J., dissenting).

Unfortunately, this appears to be one of those situations in which the exception has

swallowed the rule.[7] Despite the express language in *Acrey*, courts have routinely looked

outside the colloquy even when it exists on the record.[8] Moreover, this is paired with the

---

[7] For example, Division Three of this court in *James*, 138 Wn. App. 628, examined the waiver of the right to counsel. *James* discusses *Acrey* and its requirement of the defendant's "minimum" understanding. In *James*, there were two colloquies examined. Nonetheless, the *James* court makes the broad statement that, "We review the record as a whole in determining whether a defendant knowingly and intelligently waived counsel." *Id*. at 636. As discussed herein, this approach is contrary to the express language in *Acrey*.

[8] Some of the confusion may come from examining the requirement that a defendant's request for self-representation be unequivocal. When making that determination, the "request to do so must have been unequivocal in the context of the record as a whole." *Turay*, 139 Wn.2d at 396. The issue here is not equivocation, it is whether the colloquy on the record was minimally sufficient.

9

very imprecise language that a trial court "should" do things, that it is "strongly

recommended," and that it should have "minimum" requirements. This leads to the

present situation, where trial courts are not afforded precise direction, and the importance

of an actual meaningful colloquy is very much up for debate.

The spirit of *Acrey* and *Burns* cannot be debated. There is universal agreement that

self-representation is nearly always not in the defendant's best interest. Yet, when faced

with a situation where the colloquy is insufficient, the majority abandons the underlying

spirit, and instead looks for a way to get around the insufficient colloquy.[9] This is not

consistent with the mandate to indulge every reasonable presumption against the waiver

of fundamental rights.

A more thorough colloquy is a burden on the trial court, no doubt, but a burden

that the trial court is absolutely charged to undertake. *Acrey*, 103 Wn.2d at 210

("[T]he trial court should assume responsibility for assuring that decisions regarding

---

[9] The majority opinion points out the deferential standard of review applied to the trial court's determination. *See* Majority at 9-10. I do not disagree. The issue is whether the trial court has sufficient information to make that discretionary decision. Indeed, the *Burns* court expressly noted the trial court's discretion is predicated on a meaningful colloquy:

> *So long as a trial court conducted an adequate inquiry into a defendant's request* and there is a factual basis for the court's finding that the waiver of counsel was not knowing, intelligent, and voluntary, the trial court's discretionary decision will not be disturbed on appeal.

193 Wn.2d at 204 (emphasis added).

self-representation are made with at least minimal knowledge of what the task entails.").

And this burden must be met head-on because, "we protect the constitutional rights of

the offender, particularly the revered right to counsel, irrespective of expediency."

*Nelson*, slip. op. at 10 (Fearing, J., dissenting).

I respectfully dissent.

Johnson, J.P.T.
_____
Johnson, J.P.T.

11