IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 40407-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| SAVELIN SAVA SOCHIRCA, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — The trial court convicted Savelin Sochirca of first degree animal cruelty, finding that he had shot at least 40 BBs into Millie the dog's head, rendering her blind. This court issued a published opinion affirming Sochirca's conviction. *State v. Sochirca*, 33 Wn. App. 2d 838, 565 P.3d 155 (2025).

Prior to our issuance of that opinion, Sochirca filed a motion in the trial court, which after two amendments, became a motion for arrest of judgment, new trial, and reconsideration of sentence. The trial court denied this motion, and Sochirca limits this appeal to the denial of his motion for a new trial.

In his motion, Sochirca submitted mostly the same arguments he raised in his first appeal. The State urges us to apply the law of the case to affirm the trial court's denial of

his motion. Sochirca responds that the law of the case should not be applied to reach an unjust result, especially if compelling new facts are presented.

The "new facts" contradict the trial court's earlier findings and were insufficient to cause the trial court to grant Sochirca's motion. We infer the trial court found the "new facts" unpersuasive. We apply the law of the case here because to do otherwise would require us to disagree with the trial court on issues such as credibility and the persuasiveness of the evidence.

## FACTS

The facts and procedure leading to Sochirca's conviction are set forth in *Sochirca*, 33 Wn. App. 2d at 840-43. Of particular relevance to this appeal were Sochirca's many arguments to the trial court that he could not understand his court interpreter.

The certified Romanian interpreter told the trial court that she speaks Romanian from Romania, while Sochirca speaks Romanian from Moldova. *Id.* at 842. She explained that she understood Sochirca "100 percent." *Id.* She assured the court that "'[M]ost of the people I interpret for here in Washington State are from Moldova and there's never been any complaint in any court . . . . This is the first time when somebody refuses my services and claims that they don't understand me.'" *Id.* at 843. The court

2

commented to Sochirca, "'Well, I don't know what to tell you, because I've watched you here in the past on multiple occasions and you seem to understand fine.'" *Id.*

Certain "new facts" in Sochirca's posttrial motion shed light on this issue. In his declaration supporting his motion, Sochirca explained that his trial strategy was to get the case dismissed if the court could not provide a Moldavan interpreter. His strategy was recommended by a relative, Vitaly. Sochirca explained:

> Vitaly agreed with me that because [the public defender was paid by the government and recommended that I plead guilty,] I should dismiss him. He told me that the court had to provide me with a Moldovian translator and that if they did not do that, the case would have to be dismissed. He said he knew that had happened before.
> . . . I was relying on what Vitaly told me that they had to dismiss the case if they did not give me a Moldovan translator.

Clerk's Papers (CP) at 234.

On the day of trial, Sochirca filed a written statement. In that statement, Sochirca claimed that his children shot Millie and reiterated that the interpreter was inadequate and there was "a big problem in communication." CP at 178. The trial court would not consider the written statement.

Sochirca testified at trial that he did not shoot Millie, but his children did. He explained:

3

> When [Millie's owner] knocked at my door, . . . [he] said, I'm gonna kill you, where my dog. And, I said I killed the dog. Because I was afraid that he was gonna . . . blame [my children]. But, they are actually the ones who killed the dog. . . . I was very worried for my children . . . that [he would] do something to my children.

Rep. of Proc. at 136-37.

The trial court did not believe Sochirca's testimony. In its May 11, 2023, written decision, the court found that Sochirca shot Millie.

On May 22, 2023, Sochirca filed a motion for arrest of judgment, new trial, reconsideration of sentence, and stay of sentence. Much of Sochirca's "new evidence" submitted with his motion builds on his assertions that he did not understand the interpreter and that he did not shoot Millie. One of Sochirca's sons submitted a declaration describing his shooting of Millie, and Millie's owner coming over and threatening to kill his dad.

In her declaration, Sochirca's wife explained that she and Sochirca had lived in the United States since 2003. She stated that she and Sochirca speak Moldovan, and "[w]hen someone is speaking Romanian to me, I don't understand what they are saying." CP at 243. She stated she was not at home when Millie was shot, but she was home later when the officer arrived and Sochirca asked her to translate for him. In her declaration, she

explained that Sochirca did not want their son to go to jail, so at his urging, she told the officer that Sochirca shot Millie.

In his second revised motion, filed April 9, 2024, Sochirca asked for arrest of judgment, to dismiss or to grant a new trial, and reconsideration of his sentence. In his briefing, he raised the following legal arguments: (1) his request to proceed pro se was not unequivocal because it was linked to a request for standby counsel, (2) he did not make a knowing and intelligent decision to waive counsel (partly because it ignored his obvious low level of comprehension and understanding), (3) his shooting of Millie was not illegal because it was authorized by law, and (4) various other legal arguments relating to the animal cruelty statute. On April 15, 2024, the trial court denied Sochirca's motion without argument.[1]

Sochirca appeals to this court.

ANALYSIS

On appeal, Sochirca limits his requested relief to a new trial. He raises the same arguments he raised in his first appeal and a couple of additional arguments concerning the animal cruelty statute that he could have raised in his first appeal. The State argues

---

[1] The nearly one-year delay between Sochirca's filing of his motion and it being ruled on was mostly due to the delay in having the report of proceedings transcribed.

that the law of the case doctrine prevents Sochirca from raising all of those arguments in his second appeal. We agree.

"When we have already determined a legal issue in a prior appeal, the law of the case doctrine typically precludes us from redeciding the same legal issue on a subsequent appeal." *State v. Gregory*, 192 Wn.2d 1, 29, 427 P.3d 621 (2018). "We will reconsider a subsequent appellate argument raising the identical legal issue only when the holding of the prior appeal is clearly erroneous and the application of the law of the case doctrine will result in a manifest injustice." *Id.* at 29-30. Also, "'questions determined on appeal, or which might have been determined had they been presented, will not again be considered on a subsequent appeal if there is no substantial change in the evidence at a second determination of the cause.'" *Folsom v. County of Spokane*, 111 Wn.2d 256, 263, 759 P.2d 1196 (1988) (quoting *Adamson v. Traylor*, 66 Wn.2d 338, 339, 402 P.2d 499 (1965)).

Sochirca does not argue that any of our holdings in *Sochirca*, 33 Wn. App. 2d 838, are clearly erroneous nor does he take issue that some of the arguments raised now, but not before, could have been raised in his first appeal. Rather, he argues the law of the case doctrine is a discretionary doctrine and should not be applied if doing so would result in an injustice. We agree; the law of the case doctrine should not be applied if the

evidence on remand is substantially different and if application of the doctrine would result in a manifest injustice. *Lodis v. Corbis Holdings, Inc.*, 192 Wn. App. 30, 55, 366 P.3d 1246 (2015). But, as explained below, application of the law of the case here will not result in a manifest injustice.

The trial court had an opportunity to observe Sochirca throughout the proceedings. It was convinced that Sochirca understood the proceedings despite his protests to the contrary. The court's belief was buttressed by several statements from the interpreter. Its belief is further buttressed now, by Sochirca's postverdict explanation that his trial strategy depended on the court's inability to provide him a Moldavan interpreter.

Also, at trial, the court considered Sochirca's testimony that his children shot Millie, and that he lied to protect his children. It did not believe him. The trial court found that Sochirca shot Millie.

In his postverdict motion, Sochirca combines his discredited argument—that he could not understand the proceedings—with his argument that he did not shoot Millie. The problem with Sochirca's arguments is that the trial court did not believe them when it convicted him, and it obviously did not believe them later, after reviewing the declarations supporting his postverdict motion.

An appellate court defers to the trial court on the persuasiveness of the evidence, witness credibility, and conflicting testimony. *In re Vulnerable Adult Petition for Knight*, 178 Wn. App. 929, 937, 317 P.3d 1068 (2014). Were we to grant Sochirca a new trial, we would be usurping the trial court's role. Because the trial court impliedly found Sochirca's "new evidence" unpersuasive, there is no injustice in our applying the law of the case to deny his request for a new trial.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____        _____
Cooney, A.C.J.                                              Murphy, J.

8